In the Matter of John Leroy **HOWARD** and Nohemi Beltran Howard, Debtors.

Litton Loan Servicing, LP, Movant

v.

Rockdale County, Georgia, American Lien Fund, L.P., Respondents.

No. A06–61345–PWB.

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

July 7, 2008.

---

Guy W. Gupton, III, Atlanta, GA, for John Leroy Howard and Nohemi Beltran Howard.

Kent E. Altom, McCalla Raymer, LLC, Atlanta, GA, for Litton Loan. Servicing, L.P.

John Ayoub, Ayoub and Mansour, LLC, Atlanta, GA, for American Lien fund, L.P.

Thomas A. Bowman, Maddox, Nix, Bowman & Zoeckler, Conyers, GA, for Rockdale, Georgia.

CONTESTED MATTER

PAUL W. BONAPFEL, Bankruptcy Judge.

### ORDER (1) DENYING MOTION TO DECLARE JUNE 5, 2007 TAX SALE VOID AND (2) RETROACTIVELY ANNULLING STAY

Litton Loan Servicing, LP ("Litton") seeks a determination that the June 5, 2007 tax sale of property commonly known as 2306 Benji Boulevard, Conyers, Georgia (the "Property") by Rockdale County, Georgia, to American Lien Fund, L.P. ("ALF") is void because it violated the automatic stay that was in effect in the Debtors' bankruptcy case. ALF contends that, notwithstanding the pending bankruptcy case, the tax sale did not violate the automatic stay. Alternatively, ALF requests that the Court retroactively annul the automatic stay to validate the tax sale.[1] For the reasons stated herein, the Court concludes that, while the tax sale violated the automatic stay, cause exists to retroactively annul it.

The facts are undisputed. The Debtors filed a chapter 13 bankruptcy petition on February 7, 2006. The Property, the Debtors' residence, was property of the bankruptcy estate.[2] Litton, which asserts it holds a note and deed to secure debt on the Property, filed a proof of claim reflecting arrears of $47,691.83, and a total debt of $220,486.52. Some 16 months after the filing of the case, Litton obtained relief from the automatic stay with respect to the Property based upon the Debtors' failure to make postpetition payments as a consent order required. (Doc. No. 35, Order Lifting Stay, June 4, 2007). The Order provided that "[Litton], its successors and assigns, is allowed to proceed to assert its rights, including, but not limited to, the institution and completion of foreclosure proceedings, and to assert any and all of its respective rights and remedies under applicable law, as to its collateral." (Doc. 35 at 2).

Rockdale County, Georgia was not listed as a creditor in this case and there is no evidence that it had notice of the bankruptcy case. On January 12, 2007, Rockdale County recorded a Fieri Facias for postpetition 2006 taxes and interest totaling $3,332.57. Rockdale County contends it sent notice of the delinquency, intent to levy, and execution to the Debtor and to Fremont Investment & Loan ("Fremont"), the record lienholder on the Property. (Doc. No. 55, Rockdale County Response, Exhibit A). Although it is unclear the exact manner by which Litton succeeded Fremont as the entity holding a note and security deed, it is undisputed that Litton did not record any transfer or assignment in the records of Rockdale County.[3] Be-

---

1. This Court has authority to hear and determine this proceeding under 28 U.S.C. § 157(b)(1) as a core proceeding under 28 U.S.C. § 157(b)(2)(A), (G), and (O) within the District Court's jurisdiction under 28 U.S.C. § 1334(b) that the District Court has referred under 28 U.S.C. § 157(a) and L.R. 83.7, N.D.Ga.

2. It appears the Property was titled in the name of Debtor Nohemi Howard only and that she was the borrower on the debt owed to Fremont Investment & Loan, who held the original security deed on the Property. The Court will hereinafter refer only to the "Debtor."

3. Litton filed a proof of claim in the case listing "Litton Loan Servicing, L.P., Its Successors And/Or Assigns" as the creditor and attached 3 pages of a security deed dated September 25, 2002, identifying Fremont Investment & Loan as the original Lender.

cause Litton had no recorded interest in the Property, Litton did not receive notice of the tax lien or the impending tax sale.

On June 5, 2007, after no party had paid the taxes, Rockdale County conducted a tax sale of the Property. ALF purchased the Property at the tax sale for $171,000. After the sale, Rockdale County sent a letter to the Debtor and Fremont notifying them of the results of the tax sale, the existence of excess funds in the amount of $161,825.50, and that any party seeking to redeem the Property should contact the purchaser, ALF. (Doc. No. 54, Litton Motion, Exh. C). On July 11, 2007, Litton sent a letter to the Rockdale County Tax Commissioner asserting that the tax sale was in violation of the automatic stay and requesting that he rescind the tax sale of the Property. In response, the Rockdale County Tax Commissioner asserted that he lacked of notice of the bankruptcy case, that he had provided notice of the tax sale to the Debtor and the record security deed holder, Fremont, in compliance with Georgia law, and that, according to the recorded documents in Rockdale County, Litton had no interest in the Property.

After its purchase of the Property at the tax sale, ALF notified Litton of its right to redeem the Property. The redemption price consists of not only the sale price of $171,000, but also a 20% premium of the total price pursuant to O.C.G.A. § 48–4–42 ($34,200), sheriff's costs, and 2007 property taxes. On December 12, 2007, after notice and a hearing, the Court reopened this case in order to permit Litton to file the instant motion.[4]

This matter focuses on the competing interests of three non-debtor parties: a creditor who relies on the existence and protection of the automatic stay to protect its interest in property; an unlisted creditor who, without notice of the bankruptcy case, sells property of the estate to enforce a lien; and a non-party who, without knowledge of the pending bankruptcy, in good faith buys property that is under bankruptcy protection. Litton contends that the Court should invalidate the sale of the Property to ALF because the tax sale conducted by Rockdale County violated the automatic stay; it asserts standing to seek such relief because a creditor, just like a debtor, is protected by the stay and can be harmed by its violation. ALF contends that the tax sale was excepted from the automatic stay and that Litton lacks standing to seek its invalidation; alternatively, it requests that the Court retroactively annul the stay to validate the tax sale for cause.

In order to answer these questions, the Court must determine (1) whether Litton has standing to enforce the automatic stay and challenge the tax sale; (2) whether the tax sale conducted by Rockdale County was void because it violated the stay; and (3) whether, if it did, the tax sale is nevertheless valid because ALF can demonstrate either that an exception to the automatic stay applies or that cause exists for its retroactive annulment.

██ The filing of a bankruptcy petition operates as a stay of "any act to create, perfect, or enforce any lien against property of the estate." 11 U.S.C. § 362(a)(4). The automatic stay performs many functions. It allows a debtor a "breathing spell" in order for the debtor "to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy." H.R.Rep. 595, 95th Cong., 1 st Sess., at

---

**4.** The Debtors had voluntarily dismissed their chapter 13 case while Rockdale County, ALF, and Litton were trying to sort out the tax sale issues. The parties consent to resolution of the dispute without the necessity of an adversary proceeding.

340–41 (1977), as reprinted in 1978 U.S.C.C.A.N. 5693, 6296–97. In addition, the stay stops collection efforts against the Debtor and property of the Debtor and, to this end, performs the important function of "protect[ing] creditors by avoiding the piece-meal or distressed liquidation of the debtor's assets and a race to the courthouse, thus furthering administration of assets in an orderly fashion to achieve an equitable distribution within the framework of the Bankruptcy Code." *Ford v. Loftin (In re Ford)*, 296 B.R. 537, 548 (Bankr.N.D.Ga.2003).

■ As an initial matter, the Court concludes that Litton has standing to invoke the benefit of the automatic stay and to seek determination of whether an act taken in violation of the stay is void. As noted above, the automatic stay protects not only debtors, but also creditors and their interests in property of the estate. In *In re Ring*, 178 B.R. 570 (Bankr. S.D.Ga.1995), the court determined that the holder of a second priority security deed on property of the estate had standing to seek a determination that the senior security deed holder violated the automatic stay by advertising and conducting a foreclosure sale without obtaining relief from the stay, resulting in the second security deed holder's loss of its security interest. The court noted that, although only a trustee has standing to "avoid" a transfer, an act taken in violation of the automatic stay is void and without effect. The court ruled that "because the parties' rights must still be adjudicated in some forum ... any party with a cognizable interest in the subject property whose interests have been harmed by the act is within the zone of interests protected by the statute and

has the requisite standing to obtain a declaratory judgment under Bankruptcy Rule 7001." *Ring*, 178 B.R. at 579. This Court concurs with *Ring's* analysis and concludes that Litton has standing to seek the relief requested in its motion.[5]

The Eleventh Circuit has ruled that transactions in violation of the automatic stay of 362(a) are void. *Borg–Warner Acceptance Corp. v. Hall*, 685 F.2d 1306, 1308 (11 th Cir.1982). Here, it is undisputed that Rockdale County conducted a tax sale during the pendency of the Debtor's case when the automatic stay was in effect. In order to escape the consequence that the tax sale was void because it violated the automatic stay, ALF must demonstrate either that an exception to the stay is applicable or that cause exists for its retroactive annulment. The Court will examine each in turn.

*Section 362(b)(24)—Exception to the Automatic Stay*

■ The Bankruptcy Abuse Prevention and Consumer Protection Act amended § 362(b) to add additional exceptions to the automatic stay. One new exception, § 362(b)(24), provides that the filing of a bankruptcy petition does not operate as a stay under § 362(a) "of any transfer that is not avoidable under section 544 and that is not avoidable under section 549." Thus, if the tax sale is an act that is not avoidable under sections 544 and 549, it is an act to which the automatic stay does not apply. If the automatic stay does not apply, then Litton has no basis for relief. Section 544 deals with a trustee's rights at the time of commencement of the bankruptcy case and has no relevance here, so the question is whether the tax sale is not avoidable under section 549.

---

5. Although the relief sought here is comparable to that sought in *Ring* which was made by adversary proceeding, the parties here waived the requirements of a formal complaint and adversary proceeding and agreed to determination of the issues in the context of Litton's motion in the reopened bankruptcy case.

Section 549(a) provides that, except as provided in § 549(b) or (c), the trustee may avoid a transfer of property of the estate—

(1) that occurs after commencement of the case; and

(2)(A) that is authorized only under section 303(f) or 542(c) of [title 11]; or

(B) that is not authorized under [title 11] or by the court.

Simply put, a trustee may avoid a post-petition transfer of property of the estate if such transfer is made without court authorization. Nevertheless, certain exceptions apply. Section 549(c) provides in pertinent part:

The trustee may not avoid under [11 U.S.C. § 549(a)] a transfer of an interest in real property to a good faith purchaser without knowledge of the commencement of the case and for present fair equivalent value unless a copy or notice of the petition was filed, where a transfer of an interest in such real property may be recorded to perfect such transfer, before such transfer is so perfected that a bona fide purchaser of such real property, against whom applicable law permits such transfer to be perfected, could not acquire an interest that is superior to such interest of such good faith purchaser.

The question here is whether the tax sale of the Property falls within the parameters of § 549(c) such that it is not avoidable under § 549(a) and is, therefore, excepted from the automatic stay under § 362(b)(24). Certain elements are undisputed. The Debtor did not file a copy or notice of the filing of the bankruptcy petition in the property records of Rockdale County.[6] Further, ALF and Rockdale County were without knowledge of the commencement of the Debtor's bankruptcy case. To the extent that Litton contends that either Rockdale County or ALF were under a general duty to search the records in the bankruptcy court to determine whether any property subject to tax sale was property of a bankruptcy estate, an argument for which it has offered no legal support, the Court rejects such contention.[7]

The pivotal issue here is whether ALF is a "good faith purchaser" for purposes of § 549(c). The Bankruptcy Code defines a "purchaser" as a "transferee of a voluntary transfer, and includes [an] immediate or mediate transferee of such a transferee." 11 U.S.C. § 101(43). Although the definition of transfer is broad, see § 101(54), the term "purchaser" contemplates that the transfer is "voluntary" leading this Court to conclude that a forced sale, such as a tax sale, does not satisfy the elements of § 549(c)'s exception. See *Singleton v. Abusaad (In re Abusaad)*, 309 B.R. 895, 900 (Bankr.N.D.Tex.2004) (sheriff's sale not voluntary transfer for purposes of § 549(c)); ALAN N. RESNICK & HENRY J. SOMMER, 5 COLLIER ON BANKRUPTCY, ¶ 549.06 (15th ed. rev.2008).

Only two reported decisions of bankruptcy courts have considered the application of § 362(b)(24) since its addition to the Bankruptcy Code. In both *In re Striblin*, 349 B.R. 301 (Bankr.M.D.Fla.2006), and *In re Ducker*, 2007 WL 1119640 (Bankr. E.D.Ky. Apr. 3, 2007), the bankruptcy

---

**6.** There is no requirement that the filing of the bankruptcy petition be made by the Debtor. Indeed, the Trustee or Litton, for that matter, could have filed a copy of the Debtor's bankruptcy petition in the Rockdale County property records.

**7.** There is some dispute as to whether ALF's successful bid of $171,000 was for "present fair equivalent value." In view of the Court's ruling, it is unnecessary to determine this factual issue.

courts concluded that the postpetition foreclosure sales at issue were not excepted from the automatic stay because neither were transfers to which § 549 applies. The courts reasoned that in order for § 362(b)(24) to apply to the foreclosure sale, the sale must be a transfer that is not avoidable under § 549. The *Striblin* court held that "[s]ection 549 applies only to debtor initiated transfers" and that "[b]ecause the [s]ale [was] not a transfer to which § 549 applies in the first instance, it is not 'not avoidable under section 549' and is therefore not an exception to the automatic stay as set forth in § 362(b)(24)." *Striblin*, 349 B.R. at 303–304. *Accord, Ducker*, at 2007 WL 1119640, *2 (*quoting Striblin* for the same proposition).

■ While the *Striblin* and *Ducker* decisions result in the same outcome as the decision of this Court (that § 362(b)(24) does not apply), this Court respectfully disagrees with their analysis. The *Striblin* and *Ducker* decisions are premised on the proposition that § 549 only applies to debtor-initiated transfers. This, however, is too broad a statement and is not found in the language of § 549 itself.[8]

While § 549 avoidance includes debtor-initiated transfers, it does not exclude other unauthorized postpetition transfers. Section 549 provides a bankruptcy trustee with the power to avoid a postpetition transfer of property of the estate. By holding that § 549 only covers transfers made by a debtor, *Striblin* and *Ducker* skip the necessary analysis required by

§ 549(c). In other words, the proper question under § 362(b)(24) is not whether § 549(a) does not apply. Rather, the correct question is whether, when § 549(a) applies, the transfer is nevertheless not avoidable by operation of § 349(b) or (c). An unauthorized postpetition transfer is avoidable under § 549(a) unless a party can establish that it is "not avoidable" under § 549(b) or (c). If a party is not a good faith purchaser (or fails to meet any of the other requirements), the § 549(c) defense is unavailable and the transfer is subject to avoidance. If the postpetition transfer is subject to avoidance, then § 362(b)(24) is not applicable. It is only by examining the nature of the transfer under § 549(c) that one reaches the concept of its voluntariness. *See* 11 U.S.C. § 101(43). Section 362(b)(24) necessitates an analysis of § 549 as a whole, including the application of § 549(c).

*§ 362(d)—Annulment of the Automatic Stay*

■ Having determined that § 362(b)(24) does not except the tax sale from the automatic stay, the Court must determine whether cause exists for the annulment of the stay. The Eleventh Circuit has ruled that transactions in violation of the automatic stay of § 362(a) are void, but may be validated through annulment of the stay pursuant to § 362(d). *Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.)*, 749 F.2d 670, 675 (11 th Cir.1984); *Borg–Warner Acceptance Corp. v. Hall*, 685 F.2d 1306, 1308 (11 th Cir.

---

**8.** *Striblin* cites a decision of this Court, *Ford v. Loftin (In re Ford)*, 296 B.R. 537, 548 (Bankr.N.D.Ga.2003) for this principle. *Ford*, a pre-BAPCPA case, concluded that § 549(c) was not applicable to a transfer in violation of the automatic stay. BAPCPA's addition of § 362(b)(24) after *Ford* creates an exception to the automatic stay such that, if § 549(c) applies and renders the transfer not avoidable under § 549(a), there is no stay. If there is

no stay, the transfer cannot be void. The addition of § 362(b)(24) (albeit in its rather confusing application) appears to largely render irrelevant the void/avoidable distinction discussed in *Ford*. If there is no stay by virtue of § 362(b)(24), an act cannot be void. The Court does not read, and did not write, *Ford* as concluding that § 549(a) applies only to debtor-initiated transfers.

1982). The Eleventh Circuit has not explicitly stated the test to be applied, though it has observed that annulment of the stay should be done in "appropriately *limited* circumstances," bearing in mind that "the important congressional policy behind the automatic stay demands that courts be especially hesitant to validate acts committed during the pendency of the stay." *Albany Partners,* 749 F.2d at 675.

Courts have differed on the standard for determining whether the stay should be annulled. Some courts have held that a movant must demonstrate extreme or exceptional circumstances to warrant the extraordinary relief of retroactive annulment of the stay. *In re Soares,* 107 F.3d 969 (1st Cir.1997). In *Soares,* the court observed that "retroactive relief should be the long-odds exception, not the general rule.... [O]nly a strict standard will ensure the accomplishment of these objectives." *Soares,* 107 F.3d at 977. Observing that each bankruptcy case is unique and that it is, therefore, difficult to craft a uniform standard, the court noted that certain instances, such as where a creditor violates the stay without knowledge of the pending bankruptcy, or where the debtor has acted in bad faith, are possible grounds for retroactive relief. Nevertheless, the *Soares* court observed that these examples "illustrate that a rarely dispensed remedy like retroactive relief from the automatic stay must rest on a set of facts that is both unusual and unusually compelling." *Id.*

Other courts have applied a "balancing of the equities" test to determine whether such relief is appropriate. *In re Myers,* 491 F.3d 120 (3d Cir.2007); *In re National Environmental Waste Corp.,* 129 F.3d 1052 (9th Cir.1997). These courts also recognize that the creditor's awareness of the bankruptcy filing or the debtor's unreasonable or inequitable conduct are considerations for annulling the stay. *National Environmental Waste,* 129 F.3d at 1055. They do not, however, consider the factors "dispositive" and instead "balance[ ] the equities in order to determine whether retroactive annulment is justified." *Id.* Other relevant considerations include whether there is equity in the property; whether the property is necessary for an effective reorganization; whether the court would have granted relief from the stay if a motion for relief had been timely filed prior to the stay violation; whether failure to grant retroactive relief will cause unnecessary expense to the creditor; or whether the creditor has detrimentally changed its position on the basis of its action. *In re Anderson,* 341 B.R. 365, 369–370 (Bankr. D.D.C.2006) (citations omitted).

A closer examination of both tests reveals that they are, in fact, very similar. Both recognize that each case is *"sui generis"* and must be judged on the facts. *Soares,* 107 F.3d at 977. Moreover, both the "exceptional circumstances" and "balancing of the equities" tests focus, to a large degree, on two considerations: whether a creditor had notice of the pending bankruptcy (*i.e.,* was the creditor's conduct innocent or did it knowingly violate the stay) and whether the debtor has engaged in inequitable conduct.

Herein lies the problem—neither test precisely captures the facts that this case presents. Here, the focus is not on the debtor's conduct, but instead on the competing interests of Litton and ALF and, to a lesser extent, Rockdale County.[9] Courts traditionally focus on the debtor's inequitable or unreasonable conduct because the debtor typically is the party seeking the

---

**9.** The Debtor is not a participant in this contested 'matter and no party has alleged that

the Debtor's conduct is relevant to the relief sought.

benefit of the automatic stay. Here, the only relevant conduct is that of Litton, ALF and Rockdale County.

■■ To the extent that both the "extreme circumstances" test and the "balancing the equities" test consider the conduct of the debtor and creditor, the Court must try to give meaning to this consideration. In this regard, if the Court ignores the term "debtor" and, instead, focuses on whether *any party* seeking relief from the court has engaged in inequitable or unreasonable conduct, the inquiry regarding conduct remains relevant. Consideration of this factor, coupled with considerations of the notice issues and the status of the bankruptcy case itself, leads the Court to conclude that, applying either standard, the facts are "unusual and unusually compelling" and that cause exists to retroactively annul the stay and validate the sale of the Property to ALF.

As an initial matter, the Court observes that the Debtor has no interest in the Property and it is of no value to the bankruptcy estate. Indeed, there is no bankruptcy estate as this case was dismissed by the Debtor and reopened on Litton's motion solely to resolve this non-debtor dispute. Therefore, the outcome has no impact on the bankruptcy estate at all or other creditors.[10]

Second, it is undisputed that neither Rockdale County nor ALF had notice of this bankruptcy case. The Court cannot conclude that Rockdale County, in exercising its statutory authority to collect post-petition taxes and having given notice to the record interest holders, engaged in any type of inequitable conduct, notwithstanding its technical violation of the automatic stay. Likewise, ALF was an innocent purchaser of the property at a tax sale without notice of the existence of the bankruptcy case. So neither Rockdale County nor ALF has acted inequitably. They have done nothing more than engage in appropriate conduct under applicable nonbankruptcy law with no reason to believe that any bankruptcy law was applicable.

This leaves the conduct of Litton. While Litton has not engaged in inequitable or unreasonable conduct in the sense that it acted in bad faith, analysis of its conduct from an equitable standpoint clearly requires consideration of its failure to protect its own legal and financial stake in the Property. Litton failed to record its interest, a responsibility so fundamental to property law and protection of its own interests, it is unnecessary to comment further.

It is noteworthy that Litton did not recently acquire an interest in the Property.[11] In the Debtor's first bankruptcy

---

**10.** This does not remove the Court's jurisdiction. This controversy arises under Title 11 and, therefore, is within the jurisdictional grant of 28 U.S.C. § 1334(b).

**11.** It remains unclear exactly what Litton's role is since none of the pleadings filed in this case or any other show an assignment of the note to Litton by Fremont or any intervening holder. In the Debtor's first case, 03–64769–PWB, a proof of claim was filed by "Deutsche Bank National Trust, by and through, Litton Loan Servicing, L.P., its Successors and/or Assigns," and a motion for relief from the automatic stay was filed by "Deutsche Bank National Trust Company, by Litton Loan Ser-

vicing, L.P., its Servicing Agent." Later, in the same case, a motion for relief was filed by "Credit Based Asset Servicing and Securitization, LLC, as Trustee, by Litton Loan Servicing, L.P., its Servicing Agent." In the Debtor's second case, 05–72129–PWB, no creditor alleging an interest in the Property filed a proof of claim or otherwise participated in the case which was dismissed prior to confirmation. In the instant case, "Litton Loan Servicing, L.P., its Successors And/Or Assigns" filed the proof of claim and a consent order reimposing the stay as to Litton makes reference to Litton's "Note and Deed." Although Litton has consistently participated in

case, 03–64769–PWB, a proof of claim was filed by Deutsche Bank National Trust, by and through Litton Loan Servicing, L.P., its Successors and/or Assigns, with the notation that notices should be sent to Litton. This proof of claim filed by Deutsche "by and through" Litton, was filed on June 2, 2003, *less than nine months after Fremont Investment and Loan recorded its security deed.* Thus, for four years prior to the tax sale Litton had been actively involved with the Property and never sought to record its interest to put anyone on notice of its rights and interest in the Property. By failing to record its interest, Litton set this chain of events in motion. Rockdale County, unaware of Litton's existence, gave notice to the Debtor and to Fremont, the record lienholder, of the fi. fa. and impending tax sale. The taxes remaining unpaid by the deadline, Rockdale County conducted a tax sale.

Even aside from the issue of the tax sale notice, the facts of this case should have been a red flag to Litton that taxes were not being paid. Over the course of four years and three bankruptcy cases, the Debtor's arrears had grown to over $47,000. Litton's own proof of claim indicates that it made in excess of $12,000 in "escrow advances" on the loan. The Debtor had defaulted on postpetition mortgage payments. It is not a great leap to think that if mortgage payments are not being made, then taxes are not being paid either. As a sophisticated mortgage lender and/or servicer, Litton should have been aware that annual postpetition property taxes were an issue.

Litton is not without a remedy. It has a right to the excess proceeds of the sale and it may redeem the Property in accordanced with state law. The Court, however, declines to relieve Litton of the economic cost of redemption, a cost it bears due to its failure to protect its financial investment. Based on the foregoing, it is

ORDERED that Litton's motion to declare the June 5, 2007 tax sale conducted by Rockdale County, Georgia is void is DENIED. It is

FURTHER ORDERED that, pursuant to § 362(d), the automatic stay is annulled and the tax sale conducted by Rockdale County, Georgia is validated to the extent that it is otherwise valid under applicable nonbankruptcy law.

---

the Debtor's various bankruptcy proceedings, it is somewhat hazy as to when and from

whom Litton received an actual assignment.