**In re Danny D. MOORE and Brenda C. Moore, Debtors.**

**Danny D. Moore and Brenda C. Moore, Movants,**

**v.**

**Complete Cash Holdings, LLC, Respondent.**

**No. 09–41226–PWB.**

United States Bankruptcy Court, N.D. Georgia, Rome Division.

March 31, 2011.

---

James R. McKay, Fuller & McKay, Rome, GA, for Debtors.

## ORDER

PAUL W. BONAPFEL, Bankruptcy Judge.

The Debtors in this Chapter 13 case failed to give notice of its filing to the

Pawnbroker[1] to which they had pawned two motor vehicles. Some 18 months after the filing, the Pawnbroker, without knowledge of the bankruptcy case, repossessed them.

The Debtors seek the return of the vehicles and damages on the ground that the pawnbroker violated the automatic stay of 11 U.S.C. § 362(a). [Docket No. 48]. The Pawnbroker seeks relief from the stay under § 362(d). [Docket No. 46].

For reasons set forth below,[2] the Court concludes that the pawned vehicles were no longer property of the estate at the time of their repossession because the Debtors had not taken affirmative steps to redeem them in accordance with Georgia's pawnshop laws and that, consequently, the Pawnbroker did not violate § 362(a)(3)'s prohibition on obtaining possession of property *of* the estate. Section 362(a)(3) also prevents an entity from obtaining possession of property *from* the estate. The Court need not decide whether this provision applies when a Chapter 13 debtor is in possession of non-estate property with no legal basis for such possession because, in the circumstances of this case, the Pawnbroker is entitled to annulment of the stay

retroactively to the date the Pawnbroker repossessed the pawned vehicles. Consequently, the debtors are not entitled to return of the vehicles or to any damages.

## I. GEORGIA PAWN TRANSACTION LAW

Because this dispute involves the operation of Georgia statutes governing pawn transactions, the Court begins with a summary of their provisions that are material here.[3]

Under Georgia law, a "pawn transaction" is "any loan on the security of pledged goods or any purchase of pledged goods on the condition that the pledged goods may be redeemed or repurchased by the pledgor or seller for a fixed price within a fixed period of time." O.C.G.A. § 44–12–130(3). Although a pawn transaction traditionally requires a pawnbroker to have possession of the pledged property, Georgia law permits a borrower[4] to pledge a motor vehicle by providing that the pawnbroker's possession of the vehicle's certificate of title is conclusively deemed to be possession of the vehicle. O.C.G.A. § 44–12–130(5).

Georgia's pawnshop laws require the borrower to pay the pawnbroker the principal amount due plus interest and other

---

1. The legal name of the entity that is the pawnbroker is not clear. The Debtors refer to the Pawnbroker as "Complete Cash Holdings, LLC" and "The Cash Store, LLC" in their motions for contempt [Docket Nos. 37, 48], but as "Complete Cash" in their Second Amended Chapter 13 Plan. [Docket No. 28]. The pawn contracts identify the pawnbroker as "Cash Store, Inc." (Exhibit "A" to Brief in Support of Motion to Lift Stay. [Docket No. 52] pp. 12–15), "Complete Cash LLC" sought relief from the automatic stay [Docket No. 46], and two other entities, "Complete Cash Holdings LLC" and "The Cash Store, LLC" filed a brief in support of it. [Docket No. 52]. No one has raised the issue. Because the parties apparently do not care about who the actual party is, neither does the Court, and the Court will refer to this entity (whoever it is) as the "Pawnbroker."

2. The parties have agreed for the Court to decide the issues in this matter based on the record and statements of counsel at the hearings on November 17 and December 8, 2010. This Order constitutes the Court's findings of fact and conclusions of law pursuant to FED. R.CIV.P. 52(a), applicable under FED. R. BANKR.P. 7052 and 9014.

3. For a further explanation of the operation of the pawnshop laws, see *In re Bell*, 279 B.R. 890, 895–96 (Bankr.N.D.Ga.2002).

4. The Court uses the term "borrower" for clarity and convenience, noting that the statute refers to the person receiving money as a "seller" or "pledgor."

charges by the maturity date set forth in the pawn contract, unless the parties agree in writing to extend or continue it. O.C.G.A. §§ 44–12–131(a)(1), 44–14–403(b)(2). In the case of a motor vehicle, the borrower has an additional 30 day grace period after the maturity date (as extended, if applicable) to redeem the pawned property. O.C.G.A. § 44–14–403(b)(1), (2). To do so, the borrower must pay the principal, interest, and other charges due on the maturity date plus an additional interest charge of up to 12.5 percent of the principal. O.C.G.A. § 44–14–403(b)(3).

If the borrower does not timely redeem a motor vehicle, the statute provides for the automatic forfeiture of the borrower's ownership interest. Specifically, O.C.G.A. § 44–14–403(b) provides (emphasis added):

> Pledged goods not redeemed within the grace period *shall be automatically forfeited to the pawnbroker* by operation of this Code section, and any ownership interest of the pledgor or seller [i.e., the borrower] *shall automatically be extinguished as regards the pledged item.*

## II. FACTS AND PROCEDURAL BACKGROUND

Prior to the filing of their petition, the Debtors owned a 1999 Chevrolet Silverado pickup truck and a 1994 Chevrolet Starcraft van. They pledged both vehicles to the Pawnbroker in pawn transactions. For purposes of this Order, the Court assumes that the grace periods expired with regard to the van on April 20, 2009,

and with regard to the truck on May 5, 2009. Thus, neither grace period had expired at the time the Debtors filed their Chapter 13 petition on March 25, 2009, and the Debtors at that time had the right to redeem them.[5] When the Debtors filed their petition, they were in possession of both vehicles, but the Pawnbroker had physical possession of their certificates of title.

The Debtors' Chapter 13 plan [Docket No. 12] deals with the two vehicles as if they were encumbered by security interests rather than the subjects of pawn transactions, and it identifies the holder of the claims as "Titlemax," a wholly different entity. The identification of Titlemax as the creditor is consistent with the Debtors' Schedule D, which states that Titlemax is the creditor with a security interest in the two vehicles and lists its address. [Docket No. 1 at 14].

Although the Pawnbroker was the actual party with an interest in the two vehicles under the title pawn contracts, the Debtors did not list the Pawnbroker on their schedules or list of creditors that they filed when they commenced the case. The Pawnbroker, therefore, did not receive notice of the case as a listed creditor does. It is undisputed that the Pawnbroker did not have actual notice of the filing of the case until it repossessed the vehicles in September 2010.

The plan does not propose to redeem the vehicles. Rather, it provides for the Debtors to pay the amounts of "claims"

---

**5.** The pawn contract with regard to the van states a maturity date of January 21, 2009, so its grace period expired on February 20, 2009, unless the parties extended it. The pawn contract with regard to the truck states a maturity date of November 6, 2008, so the grace period would have expired on December 5, 2008, unless the parties extended it. (The contracts are attached as Exhibits "A" and "B" to the Pawnbroker's brief). [Docket

No. 52]. The Pawnbroker in its motion for relief from the stay [Docket No. 46] asserts "default dates" of March 21 for the van and April 5 for the truck. The Debtors do not contest these dates, but assert that the 30–day redemption period should run from them. [Docket No. 51]. The Court will assume that the grace periods expired as the Debtor contends and as the text states.

(erroneously stated as being held by Titlemax) secured by the two vehicles, with interest at 4.5 percent, under the so-called "cram-down" provision of 11 U.S.C. § 1325(a)(5)(B). Because the values of the vehicles exceed the "claims" that they secure, the plan treats them as fully secured under 11 U.S.C. § 506(a) and provides for payment of their principal amount in full, with interest.

The Court confirmed the plan on June 3, 2009. [Docket No. 17]. The grace periods for redemption of both vehicles had expired by the time the Court confirmed the plan. Meanwhile, the Pawnbroker had no notice that the Debtors had filed a Chapter 13 case or that the Court had confirmed a plan.

No one filed a proof of claim with regard to any debt related to the two vehicles. Although Debtor's counsel certified on August 21, 2009, that counsel had reviewed claims in the cases and taken action "deemed appropriate and in the best interest of my clients," the Debtors did not file a proof of claim on behalf of any creditor with regard to the vehicles. [Docket No. 23]. Under FED. R. BANKR.P. 3004, the Debtors had until September 2, 2009, to file a proof of claim on behalf of the creditor they thought held a security interest in the vehicles.

About 11 months after confirmation of the plan, on May 5, 2010, the Debtors filed a modification of the plan that provided for a change in the name of the "car creditor" from Titlemax to the Pawnbroker. [Docket No. 28]. The certificate of service attached to this modification, however, shows that the attorney for the Debtors served it on Titlemax at its address. The Bankruptcy Noticing Center similarly mailed a copy of the modification and notice of the

hearing on its approval to Titlemax. [Docket No. 30]. The Court approved the modification, without objection, on June 2, 2010. [Docket No. 33].

On September 24, 2010, the Pawnbroker repossessed both vehicles. Nothing in the record indicates that the Pawnbroker had received any notice with regard to the filing of this case at that time, and nothing in the record indicates that the Pawnbroker had actual notice of the bankruptcy case at that time.[6]

Debtors first filed a motion for contempt on September 24, 2009. [Docket No. 37]. The motion sought the return of the vehicles and damages, including attorney's fees. A hearing on the motion was scheduled for October 6, 2010. [Docket No. 37]. The day before the hearing, on October 5, 2010, the Debtors withdrew the motion [Docket No. 39] and filed an amendment to Schedule D that, finally, listed the Pawnbroker as a creditor with its proper address. [Docket No. 40–1].

Two weeks after the date for a hearing on the Debtors' withdrawn motion, the Pawnbroker filed a motion for relief from the stay and scheduled a hearing for November 17, 2010. Debtors filed the motion for contempt that is now before the Court on October 21, 2010, and likewise scheduled a hearing for November 17. [Docket No. 48]. (The Court utilizes a self-calendering procedure that permits attorneys to schedule certain types of motions for times that the Court specifies.)

The Court conducted hearings on the motions on November 17 and December 8, 2010. The parties agreed for the Court to determine the issues on the basis of the record before the Court. The Court established a briefing schedule and took the

---

6. The Pawnbroker concedes that Debtors called and said that they intended to file bankruptcy prior to doing so [Docket No. 52, p. 17–18], but notice that a debtor intends to file a bankruptcy case certainly does not provide notice that she has.

matter under advisement. Pending a ruling on the issues, the Court permitted the Pawnbroker to remain in possession of the vehicles, but not to dispose of them.

### III. DISCUSSION

The Debtors in their motion for contempt [Docket No. 48] assert that the Pawnbroker violated the automatic stay of 11 U.S.C. § 362(a) when it repossessed the vehicles and when it refused to return them. The violation of the automatic stay, they assert, constitutes contempt of court; the remedies they seek are the return of the vehicles and the assessment of damages, including attorney's fees.[7] The Pawnbroker seeks relief from the stay. [Docket No. 46].

### A. *Whether the Pawnbroker violated § 362(a)(3)*

Paragraph (3) of 11 U.S.C. § 362(a) contains the provisions of the automatic stay applicable in this situation. Section 362(a)(3) prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."

Whether the Pawnbroker's repossession and retention of the vehicles violated § 362(a)(3) requires consideration of two questions. The first is whether the vehicles were property *of* the estate at the time of the repossession. If they were, the repossession and retention violated the stay. If they were not property of the estate, the second question is whether the Pawnbroker obtained possession of property *from* the estate that violated the stay.

 The Pawnbroker's lack of knowledge of the filing of the bankruptcy case at the time of the repossession is immaterial to the question of whether its acts violated the automatic stay, because the stay applies regardless of whether a party has knowledge of its existence. Lack of knowledge of the stay is, however, material to with regard to other issues, including whether the imposition of damages is appropriate and whether the Court should annul the automatic stay, effectively granting retroactive relief from it, under 11 U.S.C. § 362(d).

### 1. *Pawned vehicles as property of the estate*

█ Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case," 11 U.S.C. § 541(a)(1), subject to certain exclusions, none of which is applicable here.[8] Bankruptcy law defines what property of the estate includes, but state law generally determines whether a debtor has a legal or equitable interest in property for purposes of § 541(a)(1) and the extent of such interest. *E.g., Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59

---

7. The usual basis for an individual to seek remedies for a violation of the automatic stay is 11 U.S.C. § 362(k). The Debtors do not invoke this statute, but it is immaterial here. The same general standards govern the availability of relief for a violation of the automatic stay and remedies for the violation whether a debtor invokes the provisions of § 362(k) or the court's civil contempt powers, except that a court cannot award punitive damages based on civil contempt.

8. 11 U.S.C. § 541(b)(8) in some circumstances excludes pawned property from property of the estate. One requirement for its application, however, is that the property be in the possession of the pawnbroker. Because a title pawn transaction with regard to an automobile that remains in possession of the borrower does not meet that requirement, § 541(b)(8) has not application here. Because bankruptcy law defines what "property of the estate" includes, the fact that O.C.G.A. § 44–12–130(5) provides that a pawnbroker is conclusively deemed to be in possession of a pawned vehicle is immaterial.

L.Ed.2d 136 (1979); *In re Bell,* 279 B.R. 890, 895 (Bankr.N.D.Ga.2002).[9]

 Property of the estate includes tangible personal property that a debtor owns subject to a lien or security interest. *E.g., United States v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). The rights of a pawnbroker in pawned property under Georgia law, however, are different from the rights that the holder of a security interest or other lien has in encumbered property to secure a debt, primarily because of the automatic right of full ownership of pawned property that a Pawnbroker has when the borrower does not timely redeem the pawned property.[10]

In the case of a pawned motor vehicle, bankruptcy courts in Georgia have determined that property of the estate does not include a pawned vehicle if the grace period for redemption has expired and the pawnbroker has repossessed the vehicle at the time of the bankruptcy filing,[11] or if the pawnbroker has taken possession of the vehicle even if the grace period for redemption has not expired.[12]

 Here, however, the Debtors had possession of the pawned vehicles at the time of the bankruptcy filing and the grace periods for their redemptions had not yet expired. Because the grace periods had not expired, the Debtors had an ownership interest in the vehicles. In this regard, it is significant that O.C.G.A. § 44–14–403(b) provides that pledged property *shall be* forfeited and that the borrower's ownership interest *shall be* extinguished if redemption does not timely occur. The statute's use of the future tense recognizes that, prior to expiration of the grace period, a borrower has a continuing beneficial ownership interest in the pledged property in addition to the legal title of record by virtue of the fact that the borrower's name remains on the certificate of title.

 Under Georgia's pawn laws, therefore, the Debtors' rights with regard to each vehicle at the time of filing their Chapter 13 petition consisted of the right to possession, legal title, a beneficial ownership interest subject to automatic divestment, and the right to maintain possession and reacquire complete ownership by redeeming it within the expiration of the grace period. This combination of rights is sufficient to make the vehicles themselves property of the estate at the time of the filing of the case. *See Charles R. Hall*

---

9. *Compare, e.g., In re Kalter,* 292 F.3d 1350 (11th Cir.2002) (vehicle repossessed prior to filing of petition is not property of estate because repossession divests debtor of ownership rights under Florida law) *and Charles R. Hall Motors, Inc. v. Lewis (In re Lewis),* 137 F.3d 1280 (11th Cir.1998) (same under Alabama law) *with Motors Acceptance Corp. v. Rozier (In re Rozier),* 376 F.3d 1323 (11th Cir.2004), opinion based on answer to certified question in 278 Ga. 52, 597 S.E.2d 367 (2004), answering question certified in 348 F.3d 1305 (11th Cir.2003) (vehicle repossessed prior to filing of petition is property of estate when repossession does not divest debtor of ownership rights under Georgia law).

10. The rights of the borrower in a pawn transaction are analogous, if not identical, to the rights of a party with an option to purchase property. See O.C.G.A. § 44–12–130(3) (Defining "pawn transaction" as "any loan on the security of pledged goods or any purchase of pledged goods on the condition that the pledged goods may be *redeemed or repurchased* by the *pledgor or seller* for a fixed price within a fixed period of time.") (emphasis added).

11. *E.g., Barnette v. Bankers Financial Services (In re Barnette),* 2008 WL 7842071 (Bankr. N.D.Ga.2008); *In re Bell,* 279 B.R. 890 (Bankr.N.D.Ga.2002).

12. *E.g., Oglesby v. Title Max (In re Oglesby),* 2001 WL 34047880 (Bankr.S.D.Ga.2001).

*Motors, Inc. v. Lewis (In re Lewis)*, 137 F.3d 1280, 1284 (11th Cir.1998).

■ The conclusion that the pawned vehicles were property of the estate at the time of the filing does not end the inquiry. All of the rights of the Debtors were subject at the time of the filing of their petition to their timely exercise of their rights to redeem the vehicles and to the automatic forfeiture of the vehicles to the Pawnbroker and the extinguishment of their ownership interests. The issue here is what effect the filing of the bankruptcy case had on the Pawnbroker's rights to automatic forfeiture and the automatic extinguishment of the Debtors' ownership rights if redemption did not timely occur.

The Eleventh Circuit has not addressed the effect of bankruptcy on pawned property, but its opinion in *Charles R. Hall Motors, Inc. v. Lewis (In re Lewis)*, 137 F.3d 1280 (11th Cir.1998), provides guidance. There, the Eleventh Circuit determined that, under applicable Alabama law, the prepetition repossession of the debtor's motor vehicle in which the creditor had a security interest left the debtor only with a right to redeem it by paying the debt in full. The court ruled that property of the estate included the debtor's right to redeem, but that such right did not render the vehicle itself property of the estate, at least for purposes of requiring the creditor to turn it over to the debtor under 11 U.S.C. § 542(a). *Id.* at 1284.

With regard to the debtor's right to redeem, the court observed, a debtor "must take certain affirmative steps to change the otherwise dormant right to redeem repossessed collateral into a meaningful ownership interest." *Lewis*, 137 F.3d at 1284. The debtor's plan proposing to pay the creditor less than the full amount owed, the court concluded, "offered no indication to [the creditor] that the estate had chosen to exercise its right

of redemption, that is, to 'fulfill' [the debtor's] secured obligation plus expenses in accordance with Alabama law." *Id.* at 1285.

*Lewis* is distinguishable from the situation here because it did not involve a pawn transaction and because the debtor in *Lewis* did not have possession of the vehicle at the time of the filing of the bankruptcy petition. The distinctions are not material with regard to analysis of the current issue.

The position of the parties in this case under Georgia's pawnshop laws is substantively the same as that of the *Lewis* parties under Alabama's laws governing the effect of repossession. In both situations, the debtor's ownership rights are subject to exercise of a right of redemption, and the rights of the creditor or Pawnbroker cannot be affected unless the debtor redeems the vehicle.

■ The fact that the Debtors here had possession of the vehicles, and that they were property of the estate, at the time of filing does not enlarge their rights or diminish the Pawnbroker's with regard to automatic forfeiture or extinguishment of the Debtors' ownership rights. The extent to which property is property of the estate is limited by any conditions on the debtor's rights under applicable nonbankruptcy law unless the Bankruptcy Code provides otherwise. As discussed below, 11 U.S.C. § 108(b) extends the time during which a Chapter 13 debtor may exercise rights to redeem pawned property, but it does not eliminate forfeiture and extinguishment if redemption does not occur.

Consequently, under the Eleventh Circuit's ruling in *Lewis*, a Chapter 13 debtor must take "certain affirmative steps" to exercise a redemption right with regard to a pawned motor vehicle in the debtor's possession at the time of the filing of the

bankruptcy case in order to maintain possession of it and to reacquire full ownership rights.

■ *Lewis* did not elaborate on what affirmative steps a debtor must take, concluding that the debtor in the case before it had taken no such steps. If a debtor's redemption rights have not expired at the time of filing, courts have noted that the provisions of 11 U.S.C. § 108(b) extend the time for redemption to 60 days after the date of filing of the petition. *E.g., Miller v. Gem Financial Services, Inc. (In re Miller)*, 2008 WL 7842089 (Bankr.N.D.Ga. 2008); *Oglesby v. Title Max (In re Oglesby)*, 2001 WL 34047880 (Bankr.S.D.Ga. 2001).[13] Some courts have ruled that, if a Chapter 13 debtor's right to redeem expires during the 60–day period and the debtor does not redeem it within that time, the debtor cannot do so thereafter. *E.g., Dunlap v. Cash America Pawn of Nashville (In re Dunlap)*, 158 B.R. 724, 728 (M.D.Tenn.1993); *Oglesby v. Title Max (In re Oglesby)*, 2001 WL 34047880 (Bankr.S.D.Ga.2001).[14] The opposite view is that a Chapter 13 debtor may exercise a right of redemption through a plan that provides for payment of the redemption amount due, with interest, in payments under the plan rather than through a lump sum.[15]

The Court need not address this question because, as in *Lewis*, it is clear that the Debtors took no "affirmative steps" to exercise their rights of redemption within the redemption period. Indeed, their plan did not propose to do anything at all with regard to the Pawnbroker's rights.

Under the facts here, *Lewis* requires a conclusion that, when the redemption period with regard to the pawned vehicles expired, they automatically became the property of the Pawnbroker and were no longer property of the estate.[16] The Pawnbroker's repossession and retention of the vehicles, therefore, were not acts to take possession of property *of* the estate that violated § 362(a)(3).

## 2. Obtaining possession of non-estate property *from* the estate

■ Section 362(a)(3) also prohibits any act to obtain possession of property

---

**13.** 11 U.S.C. § 108(b) does not limit the time to redeem property to 60 days after the filing if the redemption time under applicable non-bankruptcy law is longer. *See, e.g., Cash America Advance, Inc. v. Prado (In re Prado)*, 413 B.R. 599 (S.D.Tex.2008).

**14.** *Accord, e.g., Cash America Advance, Inc. v. Prado (In re Prado)*, 413 B.R. 599 (S.D.Tex. 2008); *Cash America Pawn, L.P. v. Murph (In re Murph)*, 209 B.R. 419 (E.D.Tex.1997). *See also In re Milne*, 185 B.R. 280 (N.D.Ill.1995); *In re Froehle*, 286 B.R. 94 (8th Cir. BAP 2002); *In re Murray*, 276 B.R. 869 (Bankr. N.D.Ill.2002). *Milne, Froehle,* and *Murray* do not involve pawn shop transactions.

**15.** *Cf., e.g., Salta Group, Inc. v. McKinney*, 380 B.R. 515 (C.D.Ill.2008), *appeal dismissed*, 610 F.3d 399 (7th Cir.2010); *In re Hammond*, 420 B.R. 633 (Bankr.W.D.Pa.2009); *In re Stevens*, 374 B.R. 31 (Bankr.D.N.H.2007). These cases do not involve pawn transactions.

Some courts have concluded that, if the right of redemption with regard to a pawned vehicle has not expired at the time of the bankruptcy filing, a Chapter 13 debtor may treat the pawnbroker as the holder of a secured claim that the debtor may satisfy in a plan under the "cram-down" provisions of 11 U.S.C. § 1325(a)(5)(B). *In re Burnsed*, 224 B.R. 496 (Bankr.M.D.Fla.1998); *In re Lopez*, 163 B.R. 189 (Bankr.D.Colo.1994). Given the provisions of Georgia's pawnshop laws and the Eleventh Circuit's ruling in *Charles R. Hall Motors, Inc. v. Lewis (In re Lewis)*, 137 F.3d 1280 (11th Cir.1998), as discussed earlier in the text, a plan cannot properly deal with pawned property in this fashion; the debtor must take "affirmative steps" to exercise the right of redemption.

**16.** *Cf., e.g., Cash America Pawn, L.P. v. Murph (In re Murph)*, 209 B.R. 419 (E.D.Tex.1997).

*from* the estate. The provision thus protects the estate's possession of property even if it is not property of the estate. For present purposes, the Court assumes that a Chapter 13 debtor in the possession of property is entitled to claim this protection of § 362(a)(3).[17]

Many courts have observed that the automatic stay applies to prevent a party from seeking possession of real estate in a debtor's possession at the time of the filing of the case, even if the debtor has no legal basis for possession.[18] Other courts, however, have concluded that the phrase "property from the estate" in § 362(a)(3) encompasses "property in the possession or control of the trustee or the debtor-in-possession, but only to the extent the trustee or debtor-in-possession has a good-faith, colorable claim to possession or control of the property."[19]

Courts have taken both approaches in the context of personal property. One view is that the automatic stay applies when the debtor has possession, but not

---

**17.** A Chapter 13 debtor is entitled to remain in possession of property of the *estate* under 11 U.S.C. § 1306(b). Chapter 13 does not specifically permit a debtor to remain in possession of property that is not property of the estate. Thus, it is arguable that § 362(a)(3) does not prevent a party from taking property in the possession of the debtor that is not property of the estate.

**18.** *E.g., Convenient Food Mart No. 144, Inc. v. Convenient Industries of America, Inc. (In re Convenient Food Mart No. 144, Inc.),* 968 F.2d 592 (6th Cir.1992); *In re Atlantic Business and Community Corporation,* 901 F.2d 325, 328 (3d Cir.1990); *48th Street Steakhouse, Inc. v. Rockefeller Group, Inc. (In re 48th Street Steakhouse, Inc.),* 835 F.2d 427, 430 (2d Cir.1987) ("[A] mere possessory interest in real property, without any accompanying legal interest, is sufficient to trigger the protection of the automatic stay."); *In re Di Giorgio,* 200 B.R. 664, 672 (C.D.Cal.1996), vacated as moot, 134 F.3d 971(9th Cir.1998); *In re Dominguez,* 312 B.R. 499 (Bankr.S.D.N.Y.2004) (collecting cases); *In re Blaylock,* 301 B.R. 443 (Bankr.E.D.Pa.2003); *In re Gagliardi,* 290 B.R. 808 (Bankr.D.Colo.2003). See also *In re Addon Corp.,* 231 B.R. 385, 389 (Bankr. N.D.Ga.1999) ("It is well established that a possessory interest may be protected by the § 362(a) automatic stay.").

In some of these cases, it is not always clear whether the court is concluding that the automatic stay applies because the party is seeking to obtain possession *from* the estate or because the debtor's possessory interest is property *of* the estate. For example, the court in *48th Street Steakhouse, Inc. v. Rockefeller Group, Inc. (In re 48th Street Steakhouse, Inc.),* 835 F.2d 427, 430 (2d Cir.1987), stated,

"[A] mere possessory interest in real property, without any accompanying legal interest, is sufficient to trigger the protection of the automatic stay." and courts have cited it for this proposition. *E.g., In re Atlantic Business and Community Corporation,* 901 F.2d 325, 328 (3d Cir.1990). *48th Street Steakhouse* also addressed the automatic stay issue in terms of whether the debtor's interest was property of the estate, however, and its holding appears to be that the debtor's interest in the real property was property of the estate.

In other cases, the court appears to base its holding on a conclusion that the debtor's possessory interest in the property is property of the estate. *E.g., Convenient Food Mart No. 144, Inc. v. Convenient Industries of America, Inc. (In re Convenient Food Mart No. 144, Inc.),* 968 F.2d 592 (6th Cir.1992).

Consequently, some of the cited cases do not necessarily support the proposition that the automatic stay prevents a party from seeking possession of property *from* the estate when the property is not property of the estate.

**19.** *E.g., St. Clair v. Beneficial Mortgage Company (In re St. Clair),* 251 B.R. 660, 667 (D.N.J.2000), *aff'd sub nom. St. Clair v. Wood,* 281 F.3d 224 (3d Cir.2001) (Table). *Accord, Twin Rivers Lake Apartments Horizontal Property Regime, Inc. v. Wallner (In re Wallner),* 2006 WL 2023188 (D.N.J.2006); *see California Sec. Management Corp. v. Kennedy (In re Kennedy),* 39 B.R. 995, 997 (C.D.Cal. 1984) ("The Court believes that, by use of the term 'possessory interest' [in legislative history to 11 U.S.C. § 541], Congress intended that the debtor have a right to possession.").

title, to a motor vehicle.[20] The more limited approach is that a debtor "should, at the very least, demonstrate some good-faith, colorable claim to or basis for possession of property in order to trigger application of the automatic stay where the estate's interest in the property arises solely through possession."[21]

Courts concluding that the debtor's possession of property alone, even without a legal basis for it, is sufficient to invoke the automatic stay have noted that a contrary determination would interfere with the orderly administration of bankruptcy cases and undermine the bankruptcy court's authority to determine whether the property is property of the estate and whether the stay applies.[22] This rationale may have particular significance when a pawnbroker asserts a right to possession of pawned property. If a court determines that the transaction does not qualify as a pawn transaction under Georgia law, the pawnshop laws do not apply.[23] A pawnbroker who relies on automatic forfeiture rights when it has none is subject to liability for actual and punitive damages under 11 U.S.C. § 362(k) for violation of the automatic stay.[24] A pawnbroker who proceeds without first obtaining stay relief clearly acts at its peril.

The Court will leave for another day the question of whether a Pawnbroker's repossession of a pawned vehicle in the possession of the debtor that is not property of the estate constitutes an act to obtain possession of property *from* the estate in violation of § 362(a)(3) because, as discussed below, the facts here permit resolution of the dispute based on other settled legal principles.

## B. Retroactive annulment of the automatic stay

■ As just discussed, it is uncertain whether the Pawnbroker's repossession of vehicles in the Debtors' possession violated the automatic stay even though they were not property of the estate at that time. Assuming, without deciding, that it did, the Court concludes that the Debtors are not entitled to any relief because the Pawnbroker is entitled to a retroactive annulment of the stay in the circumstances of this case.

■■ The Court has the authority under 11 U.S.C. § 362(d) to grant relief from the automatic stay by annulling it retroactively. *E.g., Litton Loan Servicing, LP v. Rockdale County, Georgia (In re Howard)*, 391 B.R. 511, 517–18 (Bankr. N.D.Ga.2008) (citing and discussing cases). Some courts require a showing of extreme or exceptional circumstances to warrant the extraordinary relief of retroactive annulment of the stay, while others employ a "balancing of the equities" test to determine whether such relief is appropriate. *Id.* Under either test, two important considerations are whether the violating party had notice of the pending bankruptcy case and whether the debtor engaged in inequitable conduct. *Id.*

The Pawnbroker clearly had no notice of the filing of the bankruptcy case at the time it repossessed the vehicles. The Pawnbroker had notice of the case shortly

20. *See In re Printup*, 264 B.R. 169 (Bankr. E.D.Tenn.2001).

21. *In re Johnson*, 429 B.R. 540, 544–45 (Bankr.D.S.C.2010).

22. *E.g., In re Gagliardi*, 290 B.R. 808 (Bankr. D.Colo.2003).

23. *See, e.g., Ballard v. Freedom Auto Plaza (In re Ballard)*, 2010 WL 4501891 (Bankr. M.D.Ga.2010); *In re Spinner*, 398 B.R. 84 (Bankr.N.D.Ga.2008).

24. *See In re Spinner*, 398 B.R. 84 (Bankr. N.D.Ga.2008).

after the repossessions occurred, however. Ordinarily, when a party has violated the automatic stay without notice of it the proper response is to take immediate action to remedy the violation, which in this case would have been the return of the two vehicles to the Debtors. An alternative response is to file a motion promptly with the bankruptcy court that seeks relief from the stay and requests permission to maintain possession of the property pending the court's determination of any disputed issues.

The Pawnbroker elected to retain the vehicles despite its knowledge of the bankruptcy case and did not file a motion seeking relief from the stay until almost a month after the repossessions occurred. Moreover, it did not seek an expedited hearing with regard to its right to maintain possession of the vehicles pending a ruling on the motion. In an ordinary situation, the continued retention of the vehicles with knowledge of the existence of the stay without obtaining prompt permission from the Court to do so does not provide a defense to the imposition of damages for violation of the stay.

Nevertheless, the Pawnbroker did take steps to bring the matter to the attention of the Court shortly after the repossessions. The problem would have come to the attention of the Court at a hearing about two weeks after the repossessions on the first motion for contempt that the Debtors filed, but the Court did not hold the hearing because the Debtors withdrew their motion. [Docket Nos. 37, 39]. The Pawnbroker in the meantime had filed a response to the Debtors' motion that sufficiently raised the issue and would have permitted the Court to take action at the scheduled hearing if it had been held. [Docket No. 38]. Two weeks later, and before the Debtors renewed their motion, the Pawnbroker filed a motion for relief

from the stay. [Docket Nos. 46, 48]. When the dispute finally came before the Court, the Court permitted the Pawnbroker to maintain possession of the vehicles, but not dispose of them, pending the Court's determination of the issues.

As the earlier discussion demonstrates, the Pawnbroker is clearly entitled to relief from the automatic stay because the Debtors' plan fails to provide for the Pawnbroker and because, at the time of the repossessions, the vehicles were not property of the estate. The Pawnbroker's only possible faults (assuming that the repossessions violated the stay) are that it delayed for, at most, a month or so before affirmatively seeking relief from the stay and that it then did not seek an expedited hearing. But these failures are mitigated by the fact that the Debtors withdrew their motion, effectively cancelling a hearing that would have resolved the issue of possession pending final determination of issues no more than two weeks after the repossessions. Moreover, the Debtors' withdrawal of their motion could have led the Pawnbroker to conclude that the Debtors had elected not to contest the repossessions.

In contrast, the Debtors utterly failed to follow proper procedures with regard to treatment of the Pawnbroker's interests in the pawned vehicles for 18 months. The Debtors did not list the Pawnbroker on their schedules and lists and did nothing to provide notice to the Pawnbroker of the filing of the case. Their plan improperly treated the vehicles as if they owned them subject to an ordinary security interest instead of as pawned property. Even in their second motion for contempt that is now before the Court [Docket No. 48], they continue to refer to the Pawnbroker as an ordinary creditor and do not disclose that the vehicles were the subjects of pawn transactions. Further, although their counsel reviewed the proofs of claim filed in the case, the Debtors took no action that

would result in any payments relating to the vehicles. As a consequence, the Pawnbroker who was entitled to full payment no later than May 5, 2009, had not received a single payment when it repossessed the vehicles some 16 months later.

■ When a debtor unreasonably withholds notice of the automatic stay and the creditor would be prejudiced if the debtor is able to invoke it, the debtor should be denied its protections. *See, e.g., Easley v. Pettibone Mich. Corp.*, 990 F.2d 905, 911 (6th Cir.1993). Eighteen months into this case, the Pawnbroker had no notice of this bankruptcy case because the Debtors failed to give proper notice. If they had, the Pawnbroker could have promptly protected its interests by seeking relief from the stay and by asserting an objection to the improper provisions of the plan dealing with the pawned vehicles. Indeed, the Pawnbroker quite probably could have located the vehicles sooner than it did.

By the time the Pawnbroker repossessed the pawned vehicles that it then owned, the Debtors had no right to their possession. The Pawnbroker has been entitled to possession of the pledged vehicles and to relief from the stay, if required, at least since confirmation of the Debtors' plan that did not provide for their redemption. The Debtors have thus had the use of the vehicles for a considerable period of time without paying anything.

The facts of this case demonstrate extreme or exceptional circumstances that warrant retroactive relief from the stay and that a balancing of the equities requires such relief. Consequently, the Court will grant the Pawnbroker relief from the automatic stay by annulling it retroactively, effective as of the time it repossessed the vehicles. Because the stay is thus annulled, the Pawnbroker has not violated the stay and is not in contempt of Court, and the Debtors are not entitled to any damages.

## IV. CONCLUSION

The pawned vehicles were not property of the estate at the time the Pawnbroker repossessed them. The Pawnbroker's repossession of them, therefore, did not violate the automatic stay of 11 U.S.C. § 362(a)(3) as an act to obtain possession of, or to exercise control of, property of the estate because they were not property of the estate. If § 362(a)(3)'s prohibition of any act to obtain possession of non-estate property from the estate applies when neither the Chapter 13 debtor nor the Chapter 13 estate has any colorable claim to ownership of the property and when they do not have any legitimate claim to maintain possession of the property, the facts of this case authorize annulment of the automatic stay retroactively to the time the Pawnbroker repossessed them. The Pawnbroker, consequently, is not in contempt, the Debtors are not entitled to damages, and the Pawnbroker is and was entitled to possession of the vehicles.

Based on, and in accordance with, the foregoing, it is hereby **ORDERED and ADJUDGED** as follows:

1. The Debtors' Motion for Contempt is **DENIED;**

2. The Pawnbroker's Motion for Relief from the Stay is **GRANTED** by annulling the automatic stay of 11 U.S.C. § 362(a), effective as of the date of its repossession of the vehicles, if it otherwise applied at that time;

3. The Pawnbroker is authorized to deal with the subject vehicles as their owner under the automatic forfeiture provisions of O.C.G.A. § 44–14–403(b), which extinguished any ownership interests of the Debtors.