**In re Russell Lee EBERSOLE, Debtor.**

**Brown Bark I L.P., Movant**

v.

**Russell Lee Ebersole, Respondent.**

**No. 09–51561.**

United States Bankruptcy Court,
W.D. Virginia,
Harrisonburg Division.

Dec. 1, 2010.

Russell Lee Ebersole, Stephenson, VA, pro se.

## CORRECTED DECISION AND ORDER

ROSS W. KRUMM, Bankruptcy Judge.

A hearing was held on June 23, 2010, to consider Brown Bark I L.P.'s Motion for Relief from the Automatic Stay (hereafter the "Motion for Relief") and the Debtor's Answer to the Motion for Relief from the Automatic Stay. After considering the evidence presented and the arguments of the parties the Court makes the following findings of fact and conclusions of law.

### Facts

On December 17, 2002, the Debtor executed a promissory note with Bank of America in the amount of $539,000.00 with an interest rate of eight (8) percent per annum (hereafter the "Note").[1] The Note was secured by the lien of a deed of trust on the Debtor's real property located at 667 Walters Mill Lane, Stephenson, Virginia 22656 (hereafter the "Property"). The Property is both the Debtor's primary residence and his source of income. At the hearing on the Motion for Relief the Debtor testified that the Property

> [I]s a two story building about 14,000 square feet per floor. It contains— about three-quarters of it is dedicated to pet boarding, both dogs, cats, exotic pets, so forth. It has a hundred and twelve kennels. It has an indoor training center about 8,000 square feet. It has grooming facilities consisting of a groom shop. It has bathing facilities. It has outdoor play yards for the dogs. It has agility courses for the dogs. It's located on five acres. . . . Typically on a

---

1. The Court's Decision and Order entered on November 10, 2010, in the above-captioned adversary proceeding incorrectly recited that the Debtor executed a promissory note with Bank of America in the amount of $302,393.27 with an interest rate of 14 percent per annum. The Court makes this correction pursuant to Fed.R.Civ.P. 60(a).

normal weekend we will have between eighty and a hundred and twelve dogs and cats that we board for the general public. In addition to that we also board dogs for the Virginia State Police when their handlers go away on vacation.

Transcript of record, Pg. 89. *In re Ebersole,* No. 09–51561 (Bankr.W.D.Va. Jul.14, 2010).

Brown Bark asserts that it obtained possession of the Note due to its merger with NC–WC L.P. (hereafter "NC–WC"), who obtained the Note through assignment from Bank of America.

On September 29, 2009, the Debtor filed a Chapter 13 petition. On December 9, 2009, Brown Bark I L.P. (hereafter "Brown Bark") filed its Motion for Relief. On January 14, 2010, an Order was entered converting the Debtor's Chapter 13 case to one under Chapter 11. Brown Bark asserts that the Debtor has defaulted under the terms of the Note and that it is entitled to relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) and (2). The Debtor responds that Brown Bark has no standing to request relief from the stay because it is not a holder of the obligation secured by the Property.

### Discussion

### I. 11 U.S.C. § 362(d) Relief From the Automatic Stay

Upon the filing of a debtor's bankruptcy petition 11 U.S.C. § 362(a) imposes an automatic stay that prohibits a debtor's creditors from commencing or pursuing any collection or enforcement actions against the debtor or property of the estate. 11 U.S.C. § 362(a) (West, 2010). However, under 11 U.S.C. § 362(d) "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay...." 11 U.S.C. § 362(d) (West,

2010). Brown Bark seeks relief from the automatic stay under § 362(d)(1) and § 362(d)(2). § 362(d)(1) permits granting relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1) (West, 2010). § 362(d)(2) permits granting relief from the automatic stay "if-(A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization." 11 U.S.C. § 362(d)(2) (West, 2010).

### A. Allocation of Burden of Proof Under 11 U.S.C. § 362

11 U.S.C. § 362(g) states:

In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section—

> (1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in the property; and

> (2) the party opposing such relief has the burden of proof on all other issues.

11 U.S.C. § 362(g) (West, 2010). However, where the movant is seeking relief from the automatic stay under § 362(d)(1), *In re White,* 410 B.R. 195 (Bankr.W.D.Va.2008) holds that the moving party has "the initial burden of demonstrating an appropriate basis for relief. Once that has been accomplished, however, the burden of proof rests upon the Debtor to show a lack of cause...." In reaching its holding, *White* stated:

> While § 362(g) clearly places the burden of proof on the Debtor for all issues other than the issue of the Debtor's equity in property in hearings on motions for relief from the automatic stay, it does not strip the movant of his or her initial burden in filing such motions. In fact, several authorities note clearly that

the movant still carries the initial burden of establishing a prima facie case; only then does the burden of going forward shift to the Debtor.

*White*, 410 B.R. at 195. *See In re Joyner*, 416 B.R. 190, 193 n. 1 (Bankr.M.D.N.C. 2009) ("Under section 362(g), while the party seeking relief from the stay has the initial burden of production or going forward with the evidence to establish a prima facie case for relief, the burden of proof, i.e., the burden of persuasion, rests on the party opposing the relief on all issues except the existence of equity.")

Pursuant to *White* and *Joyner*, the Court holds that with regard to the narrow issues presented by Brown Bark's Motion for Relief under § 362(d)(1), Brown Bark has the initial burden of proof to establish a prima facie case showing cause to grant relief.

■ With regard to Brown Bark's Motion for Relief under § 362(d)(2), the Court holds that under § 362(g) Brown Bark has the burden of proof to establish a lack of equity in the subject property but the Debtor bears the burden of proof as to all other issues.

### B. Standing

■ The Debtor contends that in order to have standing "Brown Bark must show that it has been harmed by Mr. Ebersole's performance under the note and that it has the right to enforce the note and the Deed of Trust as a real party in interest." Debtor's Memorandum of Law Opposing Motion for Relief From Stay, Pg. 13, *In re Ebersole*, No. 09–51561 (Bankr.W.D.Va. Aug.18, 2010). The Debtor argues that in order to have standing to file a motion for relief a movant must demonstrate that it has all of the necessary documentation required to successfully prosecute a foreclosure proceeding in a state court. *In re Weisband*, 427 B.R. 13, 22 (Bankr.D.Ariz.

2010) addresses this argument and holds that:

A movant for stay relief need only present evidence sufficient to present a colorable claim—not every piece of evidence that would be required to prove a right to foreclose under a state law judicial foreclosure proceeding is necessary. *In re Emrich*, 2009 WL 3816174, at *1 (Bankr.N.D.Cal.2009). Accordingly, not every movant for relief from stay has to provide a complete chain of a note's assignment to obtain relief.

Indeed, *Weisband* goes on to hold that "relief from stay hearings are limited in scope-the validity of underlying claims is not litigated." *Id.* (citing *In re Johnson*, 756 F.2d 738, 740 (9th Cir.1985)). The Court adopts the *Weisband* holding and finds that a movant seeking relief from the automatic stay need only have a "colorable claim" in order to establish the standing required to bring such a motion.

■ *Weisband* sets forth the proper analysis for determining whether a movant has a "colorable claim" when it states:

[I]n order to establish a colorable claim, a movant for relief from stay bears the burden of proof that it has standing to bring the motion. *In re Wilhelm*, 407 B.R. 392, 400 (Bankr.D.Idaho 2009). The issue of standing involves both "constitutional limitations on federal court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Constitutional standing concerns whether the plaintiff's personal stake in the lawsuit is sufficient to have a "case or controversy" to which the federal judicial power may extend under Article III. *Id.; see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–60, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Pershing Park Villas Homeowners*

Ass'n v. United Pac. Ins. Co., 219 F.3d 895, 899 (9th Cir.2000).

Additionally, the "prudential doctrine of standing has come to encompass several judicially self-imposed limits on the exercise of federal jurisdiction.'" *Pershing Park Villas*, 219 F.3d at 899. Such limits are the prohibition on third-party standing and the requirement that suits be maintained by the real party in interest. See *Warth v. Seldin*, 422 U.S. at 498–99, 95 S.Ct. 2197, 45 L.Ed.2d 343; *Gilmartin v. City of Tucson*, 2006 WL 5917165, at *4 (D.Ariz.2006). Thus, prudential standing requires the plaintiff to assert its own claims rather than the claims of another. The requirements of Fed.R.Civ.P. 17, made applicable in stay relief motions by Rule 9014, "generally falls within the prudential standing doctrine." *In re Wilhelm*, 407 B.R. at 398. *Weisband*, 427 B.R. at 17–18. *Weisband* concluded that if the movant were the holder of the promissory note upon which relief was sought it would "be a party injured by the [d]ebtor's failure to pay [the note], thereby satisfying the constitutional standing requirements." *Id.* *Weisband* further concluded that if the movant were the holder of the promissory note it "would also be the real party in interest under Fed.R.Civ.P. 17 [2] because under [Arizona law controlling negotiable instruments], the holder of the note has the right to enforce." *Id.*

▮ The Court adopts the *Weisband* analysis and holding and applies *Weisband* to the facts of this case below.

**2.** Fed.R.Civ.P. 17 requires that an "action must be prosecuted in the name of the real party in interest." Fed.R.Civ.P. 17 (West, 2010). There are various exceptions to this rule but those exceptions do not apply to the case at bar.

**3.** Md.Code, Commercial Law, § 3–104(a) defines a negotiable instrument as, in relevant part, "an unconditional promise or order to

*i.* **Brown Bark is the Holder of the Note**

*a.* **NC–WC L.P. Held the Note**

On December 17, 2002, the Debtor executed the Note with Bank of America. On April 6, 2004, Bank of America executed a document titled Allonge with NC–WC LP. The Allonge states that the Note is now payable "to the Order of NC–WC LP. . . ." Plaintiff's Ex. 1, *In re Ebersole*, No. 09–51561 (Bankr.W.D.Va. Jun. 22, 2010). Maryland law is the jurisdiction whose law was designated in the Note to govern the issue of whether Brown Bark is the holder of the Note. Plaintiff's Exhibit 1. *See, Porter v. Provident Bankshares Corp.*, 2007 WL 2688224, at *4 (E.D.Va. Sep. 4, 2007) (Federal court sitting in Virginia applies Maryland law to interpretation of a contract because the contract expressly provided that Maryland law shall govern said contract.) Md.Code, Commercial Law, § 1–201(2) defines "holder" as,

(a) The person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession;

(b) The person in possession of a negotiable tangible document of title if the goods are deliverable either to bearer or to the order of the person in possession; or

(c) the person in control of the negotiable electronic document of title.

Md.Code, Commercial Law, § 1–201.[3] Since the source of Brown Bark's claim is tied to NC–WC L.P., there must be evi-

pay a fixed amount of money, with or without interest, or other charges described in the promise or order, if it: (1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder. . . ." In this case, the Note is a promise by the Debtor to repay Bank of America. The Note, in its original form, is payable to Bank of America. Thus, the Note is an negotiable instrument under Maryland law.

dence that NC–WC L.P. had possession of the Note and that it was payable to NC–WC L.P. The Allonge recites that the Note is payable to NC–WC L.P. The uncontroverted testimony of Brown Bark's representative was that he is possession and control of the Allonge, which is physically attached to the Note. Tr. 14. Based upon the evidence presented NC–WC L.P. became a holder under Maryland law. As set forth below, NC–WC L.P.'s status as a holder under Maryland law was assumed by Brown Bark as a result of its merger with NC–WC L.P.

### b. Upon Merger With NC–WC, L.P., Brown Bark Became Holder of the Note

On December 31, 2008, NC–WC, L.P. merged with Brown Bark I L.P. and Brown Bark was the survivor. Plaintiff's Exhibit 3, *In re Ebersole,* No. 09–51561 (Bankr.W.D.Va. Jun. 22, 2010). Having determined that NC–WC became the holder of the Note under the Allonge, the question is now whether Brown Bark became the holder of the Note after it merged with NC–WC. At the root of this question is the issue of what rights and obligations transferred from NC–WC to Brown Bark under the merger agreement signed by both parties. Thus, this is a contractual matter because the Court is seeking to determine the rights and obligations that flowed from the implementation of the merger agreement.

In evaluating the effect of the merger agreement the Court must first determine which state's law governs the interpretation of the merger agreement. In making this determination the Court is guided by *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) which holds that in accordance with

*Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), federal courts will apply the choice of laws rules that are found in the jurisdiction in which the court sits. *See, Brendle v. General Tire and Rubber Co.,* 408 F.2d 116, 119 (4th Cir.1969) and *Hatfill v. New York Times, Co.,* 459 F.Supp.2d 462 (E.D.Va. 2006). Since this Court sits in the Commonwealth of Virginia, the Court shall apply Virginia choice of law rules.

 *Vollmar v. CSX Transp., Inc.,* 705 F.Supp. 1154, 1166 (E.D.Va.1989) holds that, "[u]nder Virginia choice of law rules, the substantive law applied in interpreting a contract ... is the law of the place of making, that place in which the last act giving rise to the contract is completed." In this case, the merger agreement was completed in Delaware and certified by the appropriate Delaware authorities. Therefore, the Court will apply Delaware substantive law in determining what rights and obligations were transferred from NC–WC to Brown Bark under the merger agreement.[4]

6 Del.C. § 17–211 regulates limited partnerships in the State of Delaware. Regarding the merger of limited partnerships § 17–211(h) states:

> When any merger or consolidation shall have become effective under this section, for all purposes of the laws of the State of Delaware, all of the rights, privileges and powers of each of the domestic limited partnerships and other business entities that have merged or consolidated, and all property, real, personal and mixed, and *all debts due to any of said domestic limited partnerships and other business entities,* as well as all other things and causes of action belonging to each of such domestic limited partnerships and other busi-

---

4. Indeed, there can be no other result since both Brown Bark and NC–WC are registered in the state of Delaware and neither party has any connection to Virginia or Maryland for purposes of interpreting the merger agreement.

ness entities, *shall be vested in the surviving or resulting domestic limited partnership or other business entity, and shall thereafter be the property of the surviving or resulting domestic limited partnership or other business entity as they were of each of the domestic limited partnerships and other business entities that have merged or consolidated,* and the title to any real property vested by deed or otherwise, under the laws of the State of Delaware, in any of such domestic limited partnerships and other business entities, shall not revert or be in any way impaired by reason of this chapter; but all rights of creditors and all liens upon any property of any of said domestic limited partnerships and other business entities shall be preserved unimpaired, and all debts, liabilities and duties of each of the said domestic limited partnerships and other business entities that have merged or consolidated shall thenceforth attach to the surviving or resulting domestic limited partnership or other business entity, and may be enforced against it to the same extent as if said debts, liabilities and duties had been incurred or contracted by it. Unless otherwise agreed, a merger or consolidation of a domestic limited partnership, including a domestic limited partnership which is not the surviving or resulting entity in the merger or consolidation, shall not require such domestic limited partnership to wind up its affairs under § 17–803 of this title or pay its liabilities and distribute its assets under § 17–804 of this title, and the merger or consolidation shall not constitute a dissolution of such limited partnership.

6 Del.C. § 17–211(h) (emphasis added).

Pursuant to § 17–211(h) the Court finds that when NC–WC merged with Brown Bark, Brown Bark inherited all of NC–WC's rights and obligations, including NC–WC's position as holder of the Note.

Accordingly, the Court finds that Brown Bark is the current holder of the Note.

### c. Brown Bark's Right to Enforce the Note

Having determined that as a result of the merger of Brown Bark and NC–WC, Brown Bark is the holder of the Note, the Court next addresses Brown Bark's ability to enforce the Note. Since the enforcement of the Note is governed by the Note's choice of law provision and the provision requires that Maryland law be applied, the Court will now turn to Maryland law regarding who may enforce the Note. *See, Porter v. Provident Bankshares Corp.,* 2007 WL 2688224, at *4 (E.D.Va. Sep. 4, 2007).

Md.Code, Commercial Law, § 3–301 states, in relevant part, " '[p]erson entitled to enforce' an instrument means (i) the holder of the instrument...." In this case, Brown Bark is the holder of the Note and thus, Brown Bark is entitled to enforce the Note.

### d. Brown Bark Has Standing to Bring the Motion for Relief

As stated in *Weisband,* the holder of a note has the constitutional and prudential standing required to have colorable claim such that it is a party in interest that can bring a motion for relief. In this case, the Court has found that Brown Bark is the holder of the Note and is entitled to enforce it. Accordingly, the Court finds that Brown Bark has established that it has a colorable claim and thus, is a party in interest that can bring this Motion for Relief.

### II. Relief From the Automatic Stay Pursuant to 11 U.S.C. § 362(d)(1) and (2)

The Motion for Relief focuses on two arguments for granting Brown Bark relief from the automatic stay, both of which are centered on the issue of equity in the Property. The first argument proceeds

under 11 U.S.C. § 362(d)(1) and asserts that Brown Bark is entitled to adequate protection and that the Debtor lacks both equity in the Property and is unable to make adequate protection payments. Therefore, Brown Bark argues, cause exists to grant relief from the automatic stay. The second argument proceeds under 11 U.S.C. § 362(d)(2) and is that there is no equity in the Property and that the Property is not needed for the Debtor's successful reorganization. Therefore, Brown Bark argues, Brown Bark is entitled to relief from the automatic stay. The Court will first address Brown Bark's argument under 11 U.S.C. § 362(d)(1).

### A. 11 U.S.C. § 362(d)(1)

■ 11 U.S.C. § 362(d)(1) permits the terminating, annulling, modifying, or conditioning of the automatic stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1) (West, 2010).[5] While 11 U.S.C. § 361 provides a list of acceptable forms of adequate protection it is not an exhaustive list. *In re Henderson*, 395 B.R. 893 (Bankr.D.S.C. 2008). Indeed, *In re Beaver*, 337 B.R. 281, 284 (Bankr.E.D.N.C.2006) holds that, "[a]dequate protection can take many forms and may even be the status quo where the value of the creditor's collateral is sufficient to provide an 'equity cushion.'" *Nantucket Investors II v. California Federal Bank (In re Indian Palms Associates, Ltd.,)*, 61 F.3d 197, 208 (3d Cir.1995) defines "equity cushion" for purposes of § 362(d)(1) as "the value of the property after deducting the claim of the creditor seeking relief from the automatic stay and all senior claims." *Nantucket* goes on to state that "[j]unior liens are disregarded for 'equity cushion' analysis because the secured creditor is entitled to adequate protection only as to its claim; it may not claim protection for others." *Nantucket*, 61 F.3d at 208 (citing *LaJolla Mortg. Fund v. Rancho El Cajon Assocs.*, 18 B.R. 283, 289 (Bankr.S.D.Cal.1982)).

In this case, Brown Bark is the senior secured creditor. In its Memorandum of Law in Support of Motion for Relief from Stay, Brown Bark states that it is "admittedly over-secured as to its own debt." Memorandum of Law in Support of Motion for Relief, Pg. 12, *In re Ebersole*, No. 09–51561 (Bankr.W.D.Va. Jul. 21, 2010). Brown Bark attempts to argue that while its claim is over-secured the value of the junior secured lien holders' claims is such that there is no equity in the property and that the lack of equity gives rise to cause for relief from the stay under § 362(d)(1). *Id.* However, this argument is not well taken because *Nantucket* clearly states that for purposes of § 362(d)(1) junior liens are not to be considered. Therefore, the Court finds that a sufficient "equity cushion" exists as to Brown Bark's lien.[6] Accordingly, the Court finds that Brown Bark has failed to demonstrate that "cause" exists under § 362(d)(1) to grant Brown Bark relief from the automatic stay.

### B. 11 U.S.C. § 362(d)(2)

#### a. Relevant Statute and Burden of Proof

11 U.S.C. § 362(d)(2) permits the terminating, annulling, modifying, or condition-

---

5. Since Brown Bark does not allege any other basis for cause aside from a lack of adequate protection the Court will limit its focus to the issue of adequate protection.

6. Brown Bark, in its Memorandum in Support of the Motion for Relief from Stay values the outstanding principal remaining on the Note at $318,728.19. Debtor's Memorandum of Law Opposing Motion for Relief From Stay, Pg. 14, *In re Ebersole*, No. 09–51561 (Bankr.W.D.Va. Aug.18, 2010). For reasons discussed later in this Decision and Order, the value of the Property is $710,000.00. This leaves an equity cushion of $391,271.81.

ing of the automatic stay "with respect to a stay of an act against property ... if (A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization." 11 U.S.C. § 362(d)(2) (West, 2010). Since the conditions are in the conjunctive, both prongs must be met in order to receive relief from the automatic stay under § 362(d)(2).

As previously stated, Brown Bark has the burden of proof to demonstrate that the Debtor does not have an equity in the Property. If a lack of equity is established then the Debtor must demonstrate that the Property is necessary for a successful reorganization.

### b. Definition of Equity for Purposes of 11 U.S.C. § 362(d)(2)

■ The Court will first address whether the Debtor has an equity in the Property for purposes of 11 U.S.C. § 362(d)(2). *Nantucket* states that with regard to determining whether equity exists for purposes of § 362(d)(2), "*all* liens are considered in calculating the equity retained by the debtor under section 362(d)(2), because the equity analysis in that section focuses on 'the value, above all secured claims against the property, that can be realized from the sale of the property for the benefit of all unsecured creditors.'" *Nantucket*, 61 F.3d at 207 (emphasis in original) (quoting *Pistole v. Mellor (In re Mellor)*, 734 F.2d 1396, 1400 n. 2 (9th Cir.1984)).

### c. No Equity Exists in the Property

In this case, as of the petition date the following liens attached to the Property and secured the listed amounts of indebtedness: (1) as of the petition date the balance due on the Note was $295,011.37; (2) Karen Becksvoort holds a judgment lien against the Debtor in the amount of $821.00, plus interest at a rate of 9% per annum and $30.00 in costs[7]; and (3) the U.S. Department of Justice holds a $711,158.78 judgment lien. The total value of the above-listed encumbrances, not including the interest that accrues on Ms. Becksvoort's judgment lien, is $1,007,021.15.

With regard to the value of the Property, the parties have presented the following valuations: (1) the Debtor has presented a 1996 real estate appraisal that values the Property at $965,000.00 and a 2002 real estate appraisal that values the Property at $1,100,000.00; and (2) Brown Bark has provided a 2009 appraisal that values the Property at $710,000.00 and a 2009 tax assessment that values the Property at $452,900.00.[8] The Court finds that given the length of time that has elapsed since the Debtor's appraisals were obtained it is unlikely that those values are an accurate reflection of the value of the Property in the current real property market. Also, the Court notes that the appraiser who returned the $710,000.00 appraisal made special note of the difficulty in valuing the Property given its geographic location and specialized use. Plaintiff Exhibit 14. Given that the appropriate value the $710,000.00 appraisal took special note of the difficulty in marketing the property, the Court finds that this value is the most persuasive of the four proffered values.

---

7. The Court notes that this lien is listed as disputed on the Debtor's Schedule D but as of the time of the hearing on this matter it remains secured by the Debtor's property.

8. The Debtor testified that he believes the Property to be worth $1.7 million to $1.8 million. The Debtor selected this range based upon what he remembered the capitalization ratio to be when the Property was first evaluated in 2002 and applying that ratio to the net operating income of the Debtor's business. The Court finds this projected value to be unpersuasive as there has been no discussion regarding the Debtor's qualification for valuing properties or the accuracy of the capitalization ratios he uses.

For purposes of determining whether equity exists under § 362(d)(2), the Court finds the value of the Property to be $710,000.00.

When the value of all the debt secured by the liens on the Property is subtracted from the value of the Property the result is negative equity in the amount of $297,021.15. Therefore, the Court finds that Brown Bark has met its burden in establishing that there is no equity in the Property for purposes of § 362(d)(2).

### d. Determination of Whether the Property is Necessary for Reorganization

Since Brown Bark has established that there is no equity in the Property, the burden now shifts to the Debtor to demonstrate that the Property is necessary for the successful reorganization of the Debtor.

*United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 375–76, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) (quoting *United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.,* 808 F.2d 363, 370–71 (5th Cir.1987)) states that in order to successfully demonstrate that the collateral subject to a motion for relief under § 362(d)(2) is necessary for the effective reorganization of a debtor, the debtor must establish "not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect.* This means ... that there must be 'a reasonable possibility of a successful reorganization within a reasonable time.' " *Timbers* goes on to hold that "while the bankruptcy courts demand less detailed showing during the four months in which the debtor is given the exclusive right to put together a plan, see 11 U.S.C. § 1121(b), (c)(2), even within that period lack of any realistic prospect of effective reorganization will require § 362(d)(2) relief." *Id.* at 371.

In analyzing whether a reorganization is in prospect the Court looks to see if a plan of reorganization has been filed in order to determine if there a foundation upon which reorganization may occur. In this case, the Debtor filed a disclosure statement on April 21, 2010 and pursuant to an Order entered on July 19, 2010, the Debtor is to filed his plan of reorganization not later than 15 days after a decision on the Motion for Relief is rendered. The Debtor testified that he was aware that his plan of reorganization had been drafted and may have been submitted to the U.S. Trustee for review. Tr. 91 and 99. Thus, the Court finds that a plan of reorganization is in prospect.

At this time, there is evidence that the plan in prospect offers "a reasonable probability of a successful reorganization." The uncontroverted testimony of the Debtor was that he will rely solely on the income generated by the Property to fund his plan. The Debtor further testified that "[t]his year our business is up 300%. Profit is way up. We continue to be well above the plan that we submitted to the bankruptcy or to the U.S. Trustee." Tr. 91. This projection of income was uncontested by Brown Bark. Thus, the only evidence before the Court is that the Debtor will file his plan of reorganization within a reasonable time and will be able to fund the plan fully from income derived from the Property. The Court finds that based upon the evidence presented by the Debtor the Property is necessary for the successful reorganization of the Debtor and that the reorganization is in prospect.

Since the Property is necessary for the successful reorganization of the Debtor, the Court finds that although a lack of equity has been established, the requirement that the collateral in question not be

necessary for a successful reorganization has not been satisfied. Since both prongs of § 362(d)(2) are required in order to grant relief from the automatic stay under this provision and only one prong has been met, Brown Bark is not entitled to relief from stay under this provision.

### Conditions to the Continuing Enforcement of the Automatic Stay

■ The testimony of the Debtor at the hearing was that pre-petition he tendered monthly payments to Brown Bark in an attempt to service his debt. These monthly payments were in the form of a check. However, Brown Bark's representative stated that Brown Bark did not negotiate those checks because the Debtor attached a note to each check stating that if the check was negotiated it would be an acceptance of the cure of all defaults. Tr. 28. In total the checks sent by the Debtor have an aggregate value of $54,582.32 and constitute monthly payments from February 2009 through September 2009. Debtor's Exhibit S. Debtor's counsel represented to the Court that the funds required to fund the checks are still available and are still being held by the Debtor. Tr. 9 and 102. It appears from the evidence that Brown Bark has not collected Note payments that could be applied to the loan balance since February 2009. Thus 20 months of Note payments have not been received and applied. Based on the evidence, the total amount of these payments is approximately $136,455.00,[9] exclusive of any late payment penalties. These facts demonstrate a diminution of the equity cushion upon which the Debtor relies to keep the stay in force under § 362(d)(1). § 362(d) affords the Court discretion to "condition" the continuance of the stay. Accordingly, the Court will condition keeping the stay

in force on the Debtor tendering a check to Brown Bark in the amount of $54,582.32 in collected funds not later than November 30, 2010 at 4:30 p.m. Upon receipt of this check Brown Bark is to return the checks mailed by the Debtor to Brown Bark for the months of February, 2009 up to and including September, 2009. Negotiation of the $54,582.32 in collected funds will not result in Brown Bark releasing any claim it may have against the Debtor for any alleged breach or any other cause of action that may arise under the terms of the Note. As a further condition of keeping the stay in force the Debtor shall tender in collected funds to Brown Bark the October and November 2010 Note payments not later than November 30, 2010 together with any late payment penalties required by the Note for those months and thereafter, beginning in December 2010 Debtor shall make the Note payments according to its terms. Failure to comply with any the conditions will permit Brown Bark to file notice of default of conditions with both the Court and the Debtor, which notice may request entry of an order for relief and if the Debtor does not cure the notice of default of conditions within ten (10) days of the date of Brown Bark's notice an order for relief will be entered without further notice or hearing.

### III. Conclusion

The Court finds that Brown Bark has a "colorable claim" based on its status as holder of the Note and therefore, has standing to bring the Motion for Relief. The Court further finds that at this time Brown Bark has an equity cushion that is subject to diminution and conditioning of continuance of the stay is warranted. Finally, the Court finds that the collateral

---

9. 8 monthly payments from February 2009 through September 2009 total $54,582.32 giving a monthly payment of $36,455.00 over a 20 month period.

that is the subject of the Motion for Relief is necessary for the successful reorganization of the Debtor and therefore, Brown Bark is not entitled to relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(2).[10] Accordingly, it is

## ORDERED

That, as a condition for keeping the stay in force, by November 30, 2010, the Debtor will deliver to Brown Bark $54,582.32 in collected funds and upon receipt Brown Bark is to return the checks mailed by the Debtor to Brown Bark for the months of February, 2009 up to and including September, 2009. Negotiation of the $54,582.32 check will not result in Brown Bark releasing any claim it may have against the Debtor for any alleged default breach under the terms of the Note. It is,

## FURTHER ORDERED

As a further condition to keeping the stay in force the Debtor shall deliver in collected funds to Brown Bark I L.P. the October and November Note Payments together with any applicable late payment fees for those months not later than November 30, 2010, and beginning in December 2010 and thereafter Debtor shall make the Note payments according to its terms. It is,

## FURTHER ORDERED

That failure of the Debtor to comply with any of the foregoing conditions imposed by this Order will result in entry of an order lifting the stay upon notice of default of conditions to both the Court and Debtors by Brown Bark I L.P. and its request for entry of an order for relief which will be granted without further notice or hearing if Debtor has not cured the

default noticed within ten (10) days of the date of Brown Bark I L.P.'s notice.

Copies of this Corrected Decision and Order are directed to be sent to the Debtor, Russell Lee Ebersole, 667 Walters Mill Lane, Stephenson, VA 22656, and to counsel for Brown Bark I L.P., Steven L. Higgs, Esquire.

---

10. The Court notes that both parties devoted considerable energy to arguing whether a default had occurred under the terms of the Note and if so, what interest rate to apply. However, the Court does not need to take these matters up as there is no provision in the Bankruptcy Code that requires that a default occur in order for a party to seek relief from the automatic stay.