ELECTRONIC CITATION:  2011 FED App. 0015P (6th Cir.)
File Name:  11b0015p.06

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| MEGAN LYNN RICE, | ) | |
| | ) | No. 11-8032 |
| Debtor. | ) | |
| _____ | ) | |

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio.
Bankruptcy Case No. 11-40227

Decided and Filed:  December 5, 2011

Before:  BOSWELL, FULTON, and McIVOR, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ON BRIEF:**  Theodore A. Konstantinopoulos, JAVITCH, BLOCK & RATHBONE, Cleveland, Ohio, for Appellant.

_____

**OPINION**
_____

G. HARVEY BOSWELL, Bankruptcy Appellate Panel Judge.  In this appeal, Wells Fargo Bank appeals an order of the bankruptcy court which concluded Wells Fargo Bank lacked standing to seek relief from the automatic stay in the debtors' chapter 7 bankruptcy case.  For the reasons that follow, the Panel reverses the bankruptcy court's decision and remands the case for a hearing on Wells Fargo Bank's motion for relief from the stay.

**ISSUE ON APPEAL**

The issues raised by this appeal are whether the bankruptcy court erred: (1) in concluding that Wells Fargo had an obligation to change the lienholder of record on the Certificate of Title to be entitled to relief from stay and abandonment; and (2) in concluding that there must be "Unity of Entity" or "Entity Unity" before Wells Fargo is entitled to seek relief from stay?

**JURISDICTION AND STANDARD OF REVIEW**

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Northern District of Ohio has authorized appeals to the Panel, and no party has timely elected to have this appeal heard by the district court. 28 U.S.C. § 158(b)(6), (c)(1). A final order of the bankruptcy court may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1). For purposes of appeal, a final order "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citations omitted). An order denying a motion for relief from the automatic stay is final. *In re Schaffrath*, 214 B.R. 153, 154 (B.A.P. 6th Cir. 1997).

Orders denying motions for relief from stay are reviewed for an abuse of discretion. *Spierer v. Federated Dep't Stores, Inc.* (*In re Federated Dep't Stores, Inc.*), 328 F.3d 829, 836 (6th Cir. 2003). "An abuse of discretion occurs only when the [trial] court relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard." *Kaye v. Agripool, SRL* (*In re Murray, Inc.*), 392 B.R. 288 (B.A.P. 6th Cir. 2008); *See also Mayor and City Council of Balt., Md. v. West Virginia* (*In re Eagle-Picher Indus., Inc.*) 285 F.3d 522, 529 (6th Cir. 2002) ("An abuse of discretion is defined as a 'definite and firm conviction that the [court below] committed a clear error of judgment.' " (citation omitted)). "The question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion." *Barlow v. M.J. Waterman & Assocs. Inc.* (*In re M.J. Waterman & Assocs., Inc.*), 227 F.3d 604, 608 (6th Cir. 2000).

**FACTS**

The debtor, Megan Lynn Rice ("Debtor"), purchased a 2003 Chevy Trailblazer ("Trailblazer") from Classic Chevrolet, Chrysler, Dodge, Jeep ("dealership") on July 10, 2008, for $14,556.36. Debtor financed the purchase of this vehicle with the dealership and granted the dealership a security interest therein. On that same day, the dealership transferred the note and security interest to Wells Fargo Auto Finance, Inc. ("WFAFI"). WFAFI's lien was noted on the Trailblazer's certificate of title.

On July 11, 2008, WFAFI transferred its security interest in the Trailblazer to Wells Fargo Bank ("WFB") pursuant to a June 26, 2006, Receivables Transfer Agreement. This agreement provided for the assignment of all right, title and interest of WFAFI in retail installment sales contracts and installment loans secured by new and or/used vehicles and the security interests associated therewith to WFB "on a daily basis at the close of business on each business day . . . ." Pursuant to this agreement, WFB has possession of and services the promissory notes. WFB did not record the assignment of Debtor's note and security interest nor did it note the assignment on the Trailblazer's certificate of title.

Debtor defaulted on the Trailblazer in September 2010 and WFB repossessed the vehicle on January 4, 2011. Debtor filed her chapter 7 petition for bankruptcy relief on January 28, 2011. On February 9, 2011, WFB filed a motion for relief from stay and an amended motion for relief from stay[1] in which it alleged that the Debtor did not have equity in the vehicle and it was entitled to relief from the automatic stay and abandonment of the property pursuant to 11 U.S.C. §§ 361, 362, 363 and 554. As exhibits to its motion, WFB attached a copy of the original retail installment sales contract between Debtor and the dealership, a copy of the Trailblazer's certificate of title, a copy of the June 26, 2006, Receivables Transfer Agreement between WFAFI and WFB, and a copy of a

---

[1]The only difference between the two motions is that in the body of the original motion, the Debtor is referred to as "Megan Lynn Rice." In the amended motion, the Debtor is referred to as "Megan Lynn Rice aka Megan Rushmore." The certificate of title for the Trailblazer lists the owner of the vehicle as "Megan Rushmore."

notarized affidavit which stated that WFAFI assigned the contract at issue in this case to WFB and WFB, therefore, was entitled to bring the motion for relief from the automatic stay.

At the initial hearing on the amended motion for relief, the attorney for WFB appeared in the bankruptcy court to seek "guidance as to what will satisfy the court as to providing a clear chain of title." (Transcript of hearing, March 17, 2011,p. 2.) The bankruptcy court stated that it did not believe WFB was the proper party to seek relief from the stay because it did not note the assignment on the Trailblazer's certificate of title and, therefore, did not have a valid assignment of the security interest in the vehicle. WFB's attorney disagreed with the court and alleged that Ohio law did not require the lienholder on a certificate of title to be changed in order to validly assign a security interest in the vehicle. The bankruptcy court disagreed with counsel for WFB and stated that the case WFB had cited in support of its argument, *Rhiel v. Wells Fargo Fin. Acceptance* (*In re Fields*), 351 B.R. 887 (Bankr. S.D. Ohio 2006), was not on point because that case dealt with the issue of whether an original vehicle title was perfected in the context of an avoidance action. The bankruptcy court stated that it was not questioning whether WFAFI has a perfected title to the Trailblazer. Instead, the bankruptcy court was concerned with whether WFB has a security interest in the vehicle sufficient to give it standing to bring a motion for relief from the automatic stay. Counsel for WFB asked for the opportunity to brief the issue. The court granted WFB's request and adjourned the matter for 30 days.

WFB filed a memorandum in support of its motion for relief on April 7, 2011, in which it set forth three arguments in support of its contention that it is the proper party to seek relief from the stay. First, WFB alleged that WFAFI validly assigned its interest in the Debtor's note and Trailblazer to WFB by virtue of the June 26, 2006 Receivables Transfer Agreement. Second, WFB asserted that Ohio law does not require a creditor who obtains an interest in a motor vehicle by assignment to record that assignment. Lastly, WFB argued that Ohio law also does not require a creditor who obtains an interest in a motor vehicle by assignment to record its interest on the certificate of title. Consequently, WFB asserted that as a valid assignee of WFAFI it is properly in the chain of title and entitled to seek relief from the automatic stay.

The bankruptcy court took up WFB's amended motion for relief from stay at the adjourned hearing on April 14, 2011. At the hearing, the bankruptcy court stated that WFB's memorandum had not swayed its decision:

> And the Court has read your brief and has read your cases and still finds that we appear to be talking about two different things.

> The Court's issue is that – not that [WFAFI] . . . doesn't have a perfected security interest. The Court's problem is that [WFB] . . . has the assignment of the note and is not listed on the certificate of title as a lienholder. The fact that there is a lienholder on the certificate of title does give the world notice that there is a lien. I have no quarrel with the cases that you have cited to that effect. But vis-a-vis [WFB] and the Debtor the question is whether you have established the right to obtain relief from stay. And unless I'm missing something, [WFB] and [WFAFI] are two separate entities.

> . . . .

> . . . [I]t didn't make any difference [in (*In re Fields*)] because that was whether it could be avoided and whether it was perfected, not whether there was relief from stay. That's what you're missing. You're missing about whether all of the world knows there is a lienholder versus who has entitlement to relief from stay. There are two entities here. You've just acknowledged they're two separate entities. And they have to be merged into one entity before you can actually take the action you're talking about. . . . .

> . . . .

> I'm not saying – let me make myself clear. I'm not challenging the validity of the assignment. I'm not challenging the perfection by [WFAFI]. I'm saying that [WFB] has not presented evidence to this Court that it has the right to relief from stay because there are two separate entities who are listed here. [WFB] has the note, [WFAFI] is still listed as the lienholder on the title.

> . . . .

> . . . I'm not talking about whether the assignment is good. I'm not talking about – perfection hasn't been an issue here at all and I told you that when you were here before, that it wasn't an issue of perfection. It's an issue of unity of entity.

(Transcript of hearing, April 14, 2011, pp. 2-6.) At the conclusion of the hearing, the bankruptcy court denied WFB's amended motion for relief from stay. The court entered an order on April 18,

5

2011, denying the amended motion "[f]or the reasons set forth on the record . . . ." WFB filed its timely notice of appeal on April 29, 2011.

## DISCUSSION

The issue at the heart of this appeal is who is a "party in interest" for purposes of 11 U.S.C. § 362(d). The bankruptcy court concluded that WFB did not have standing to pursue relief from the automatic stay because, although it had possession of the note, WFAFI was still listed as the lienholder on the Trailblazer's certificate of title. Consequently, the bankruptcy court concluded that there was no"unity of entity" between WFB and WFAFI and WFB was, therefore, not entitled to obtain relief from the automatic stay.

Although used often throughout the Bankruptcy Code and rules, the term "party in interest" is not statutorily defined. The Sixth Circuit has only addressed the issue once and that was in the context of Rule 4007(c). *Brady v. McAllister* (*In re Brady*), 101 F.3d 1165 (6th Cir. 1996) (finding that a chapter 7 trustee is a "party in interest" who may move for an extension of time pursuant to Rule 4007(c) within which creditors may file a non-dischargeability complaint). In reaching its decision, the Sixth Circuit did not set forth extensive guideposts by which a court may measure its decision-making process with regard to the "party in interest" definition outside of the issue before it: whether a chapter 7 Trustee had standing to file a motion for an extension of time under Rule 4007(c). *Id.* at 1171. (The Sixth Circuit found that the chapter 7 Trustee's status as a "unique party with comprehensive knowledge of the case [had] the best ability to communicate with other interested parties" and therefore made him a proper movant for such relief. Moreover, the trustee's duty under § 704 to investigate the financial affairs of a debtor suggested that the trustee had standing to seek an extension of time under Rule 4007(c)).

The Sixth Circuit Bankruptcy Appellate Panel has addressed the "party in interest" definition twice. Both cases involved a party's standing to file an objection to a proof of claim under 11 U.S.C. § 502(a) and Federal Rule of Bankruptcy Procedure 3008. *Normali v. O'Donnell* (*In re O'Donnell*), 326 B.R. 901 (B.A.P. 6th Cir. 2005) (unpub. table decision); *Morton v. Morton* (*In re Morton*), 298 B.R. 301 (B.A.P. 6th Cir. 2003). In determining whether the objecting party was a "party in interest"

6

within the meaning of § 502(a), both Panels approvingly quoted language from *In re Cowan*, 235 B.R. 912 (Bankr. W.D. Mo. 1999):

> [Party in interest] has been described as an expandable concept depending on the particular factual context in which it is applied. In various contexts, a "party in interest" has been held to be one who has an actual pecuniary interest in the case; anyone who has a practical stake in the outcome of a case; and those who will be impacted in any significant way in the case.

*Morton*, 298 B.R. at 307 (citing *Cowan*, 235 B.R. at 915) (internal quotation marks and citations omitted). Additionally, as one bankruptcy court in the Sixth Circuit has recognized, "[i]n defining ["party in interest"], . . . the legislative history preceding the enactment of the Bankruptcy Code indicates that a court should give the term a broad interpretation after giving due consideration to the particular context in which the term will be applied." *In re Citi-Toledo Partners II*, 254 B.R. 155, 163 (Bankr. N.D. Ohio 2000). The Second, Third, Fourth, Seventh, and Eighth Circuits have all agreed with these general guidelines for interpreting the term "party in interest" in the bankruptcy arena. *In re Global Indus. Techs., Inc.*, 645 F.3d 201, 210 (3rd Cir. 2011); *Yadkin Valley Bank & Trust Co. v. McGee* (*In re Hutchinson*), 5 F.3d 750, 756 (4th Cir. 1993); *In re James Wilson Assocs.*, 965 F.2d 160, 169 (7th Cir. 1992); *Kapp v. Naturelle, Inc.* (*In re Kapp*), 611 F.2d 703, 706 (8th Cir. 1979). "Whether a party qualifies as a 'party in interest' is determined on a case-by-case basis, taking into consideration whether that party has a 'sufficient stake' in the outcome of that proceeding." *Church Mut. Ins. Co. v. Am. Home Assurance Co.* (*In re Heating Oil Partners*), 422 Fed. App'x 15, 17 (2nd Cir. 2011). When dealing with assignments, "[a]n assignee cannot prevail on the claims assigned by another holder, [and thereby be a "real party in interest"] without proving the existence of a valid assignment agreement." *Worldwide Asset Purchasing, L.L.C. v. Sandoval*, No. 2007-CA-00159, 2008 WL 5104769, at *5 (Ohio Ct. App. July 14, 2008).

Turning to the issue of who is a "party in interest" for purposes of § 362(d), courts tend to focus the definition on parties who are entitled to enforce the obligation. *Roslyn Sav. Bank v. Comcoach Corp.* (*In re Comcoach*), 698 F.2d 571, 573 (2nd Cir. 1983) ("Generally, the real 'party in interest' [under § 362(d)] is the one who, under applicable substantive law, has the legal right

which is sought to be enforced or is the party entitled to bring suit."); *Veal v. Am. Home Mortg. Servicing* (*In re Veal*), 450 B.R. 897, 914 (B.A.P. 9th Cir. 2011) (looking at caselaw and Federal Rule of Civil Procedure 17(a) to find that "a party seeking stay relief need only establish that it has a colorable claim to enforce a right against property of the estate."); *Brown Bark I L.P. v. Ebersole* (*In re Ebersole*), 440 B.R. 690, 694 (Bankr. W.D. Va. 2010); *In re Lewis*, No. 09-33455, 2009 WL 3614763 at * 3 (Bankr. E.D. Tenn. Oct. 26, 2009) (relying on both the *In re Cowan* language cited in *In re Morton* and Federal Rule of Civil Procedure 17(a) to restrict the "party in interest" inquiry under § 362(d) to "who, under the applicable substantive law, has the legal right which is sought to be enforced or is the party entitled to bring suit."). The determination of whether a party is a "party in interest" for purposes of § 362(d) must be determined on a case-by-case basis, with reference to the interest asserted and how [that] interest is affected by the automatic stay." *Veal*, 450 B.R. at 913; *In re Mims*, 438 B.R. 52, 55 -56 (Bankr. S.D.N.Y. 2010) (citing *Kokoszka v. Belford*, 417 U.S. 642, 645, 94 S. Ct. 2431 (1974) for the proposition that "the Supreme Court has suggested that when an undefined term is used in bankruptcy law, '[i]n determining the term's scope—and its limitations—the purposes of the Bankruptcy Act 'must ultimately govern.' "); *In re Woodberry*, 383 B.R. 373, 378 (Bankr. D. S.C. 2008). "The purpose of the automatic stay is to protect creditors in a manner consistent with the bankruptcy goal of equal treatment," *Chao v. Hosp. Staffing Servs., Inc.*, 270 F.3d 374, 382 (6th Cir. 2001), and "to give the debtor a breathing spell from his creditors and relieve him of the financial pressures that drove him to bankruptcy." *Boatmen's Bank of Tenn. v. Embry* (*In re Embry*), 10 F.3d 401, 404 (6th Cir. 1993) (citation omitted).

With these principles in mind, a secured creditor clearly has standing to seek relief from the automatic stay as long as it can "show that it has an interest in the relevant note, and that it has been injured by debtor's conduct (presumably through a default on the note)." *In re Wilhelm*, 407 B.R. 392, 398 (Bankr. D. Idaho 2009); *In re Salazar*, 448 B.R. 814, 819 (Bankr. S.D. Cal. 2011) ("If the moving party has a right to assert a claim, even though the claim is disputed, standing to seek stay relief may be found."); *In re Trexler*, 97 B.R. 206, 207 (Bankr. E.D. Pa. 1989). An assignee may also have standing to pursue relief from the stay as long as the assignment is valid and the requisite elements of a § 362(d) claim are present. *In re Shapoval*, 441 B.R. 392, 394 (Bankr. D. Mass. 2010); *Mims*, 438 B.R. at 56; *Litton Loan Servicing, LP v. Rockdale Cnty., Ga., Am. Lien Fund, L.P.* (*In*

*re Howard*), 391 B.R. 511, 515 (Bankr. N.D. Ga. 2008).  As the party seeking relief, the movant "has the responsibility to convince the [c]ourt that the party seeking relief from the stay with respect to the [p]roperty has an interest in the [p]roperty." *Deutsche Bank Nat'l Trust Co. v. Urdahl* (*In re Urdahl*), No. 07-07227-PB7, 2008 WL 8013408, at *2 (Bankr. S.D. Cal. 2008); *Ebersole*, 440 B.R. at 694.

State law determines whether a party has an enforceable right in, or a colorable claim to, the debtor's property.  *Butner v. United States*, 440 U.S. 48, 54, 99 S. Ct. 914, (1979); *Rogan v. Bank One, N.A.* (*In re Cook*), 457 F.3d 561, 566 (6th Cir. 2006). When dealing with secured transactions in Ohio, there are two key factors in determining whether a party has an enforceable security interest: the creation of the security interest and the perfection of that interest.  *See Drown v. Perfect* (*In re Giaimo*), 440 B.R. 761, 766-67 (B.A.P. 6th Cir. 2010).  With respect to motor vehicles, creation of the security interest is governed by Article 9 of Ohio's version of the U.C.C. while the perfection is governed by Ohio's Certificate of Title Act.  *Id.*

Pursuant to Ohio Revised Code § 1309.203,

(B) . . . a security interest is enforceable against the debtor and third parties with respect to collateral only if:

> (1) Value has been given;

> (2) The debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and

> (3) One of the following conditions is met:

>> (a) the debtor has authenticated a security agreement that provides a description of the collateral . . . .

9

Ohio Rev. Code 1309.203(B). Perfection of security interest in an automobile is governed by Ohio Revised Code § 4505.13 which states:

> Subject to division (A) of this section, any security agreement covering a security interest in a motor vehicle, if a notation of the agreement has been made by a clerk of a court of common pleas on the face of the certificate of title or the clerk has entered a notation of the agreement into the automated title processing system and a physical certificate of title for the motor vehicle has not been issued, is valid as against the creditors of the debtor, whether armed with process or not, and against subsequent purchasers, secured parties, and other lienholders or claimants.

Ohio Rev. Code § 4505.13(B).

In the case presently before the panel, no one disputes that the parties properly created a security interest in the Trailblazer by complying with Ohio Rev. Code § 1309.203(b). The parties executed a valid security agreement when the Debtor purchased the Trailblazer and that agreement was later assigned to WFB. At the April 14, 2011, hearing, the bankruptcy court stated that it was not disputing the validity of the assignment. The court also stated that it was not disputing that WFAFI had properly perfected its lien on the Trailblazer by complying with Ohio Rev. Code § 4505.13(B) and noting its lien on the certificate of title. The only issue the appellant and the bankruptcy court disagree on is whether WFB was required to note the assignment on the Trailblazer's certificate of title (and thereby have "unity of entity") in order to have standing to bring the motion for relief from stay.

At the April 14, 2011, hearing, the bankruptcy court stressed that the holding in the *In re Fields* case was inapplicable to the case before it because

> it didn't make any difference [in (*In re Fields*)] because [the issue] was whether it could be avoided and whether it was perfected, not whether there was relief from stay. That's what you're missing. You're missing about whether all of the world knows there is a lienholder versus who has entitlement to relief from stay. There are two entities here. You've just acknowledged they're two separate entities. And they have to be merged into one entity before you can actually take the action you're talking about. . . . .

10

Although the dispute in *Fields* was different from the one in the present case, the discussion and conclusions regarding the validity of the creditor's perfected security interest are equally applicable to the case before the panel.[2]

The facts in *Fields* are identical to the ones in the present case. In *Fields*, the debtor financed the pre-petition purchase of a 2001 Chevy Silverado with Capital One Auto Finance. To secure the obligation, the debtor granted Capital One a security interest in the pickup. Capital One was noted as the lienholder on the certificate of title. Pursuant to a receivables purchase agreement (executed 2 years prior to the debtor's purchase of the truck), Capital One sold the debtor's note to Wells Fargo and assigned its lien rights in the pickup to Wells Fargo. The parties never noted the assignment on the certificate of title and when the debtor filed for bankruptcy relief, Capital One was still shown as the First Lienholder on the certificate.

After the petition was filed, the trustee moved to avoid the assignment to Wells Fargo under § 544. The trustee argued that because Wells Fargo had not perfected its security interest in the pickup by noting the lien assignment on the certificate of title, Wells Fargo's security interest was unperfected at the time the petition was filed and could be avoided by the trustee. The *Fields* court thoroughly analyzed Ohio's law regarding the assignments of lien rights in motor vehicles.

> Under Ohio law, perfection of a security interest is generally accomplished through the filing of a financing statement. Ohio Rev.Code § 1309.310(A). However, this method of perfection is inapplicable in the case of motor vehicles. Ohio Rev.Code § 1309.311(A)(2). Perfection of a security interest in a motor vehicle is governed by § 4505.13, which provides in relevant part as follows:

---

[2]In fact, it could be argued that the threshold requirements on the issue of standing to bring an avoidance action may even be higher than those under § 362 since the "zone of interests" protected by § 362 is broader than the trustee's rights and powers under § 544. *In re Howard*, 391 B.R. 511, 515 (Bankr. N.D. Ga. 2008) ("[A]lthough only a trustee has standing to 'avoid' a transfer, an act taken in violation of the automatic stay is void and without effect. . . ."[A]ny party with a cognizable interest in the subject property whose interests have been harmed by the act is within the zone of interests protected by [§ 362] and has the requisite standing to obtain a declaratory judgment under Bankruptcy Rule 7001." (citation omitted)).

> [A]ny security agreement covering a security interest in a motor vehicle, if a notation of the agreement has been made by a clerk of a court of common pleas on the face of the certificate of title or the clerk has entered a notation of the agreement into the automated title processing system and a physical certificate of title for the motor vehicle has not been issued, is valid as against the creditors of the debtor, whether armed with process or not, and against subsequent purchasers, secured parties, and other lienholders or claimants.

> Ohio Rev.Code § 4505.13(B). According to the statute, there are two ways to perfect a security interest in a motor vehicle: 1) by notation of the lien on the vehicle's certificate of title, and 2) by the clerk's entering the notation into the automated title processing system if no physical certificate of title has yet been entered. Compliance with the requirements of § 4505.13 is equivalent to the filing of a financing statement under Chapter 1309. Ohio Rev.Code § 1309.311(B).

*Fields*, 351 B.R. at 890. Turning to the issue of assignment, the *Fields* court looked to Ohio Revised Code § 1309.311(A)(2) which provides that "the filing of a financing statement is not necessary or effective to perfect a security interest in property subject to" the Certificate of Motor Vehicle Title Law (Chapter 4505). Section 1309.311 further provides that "duration and renewal of perfection of a security interest perfected by compliance with the requirements prescribed by statute, regulation, or treaty described in division (A) of this section [such as Chapter 4505] are governed by this chapter." Ohio Rev. Code § 1309.311(C). Because "[t]he assignment of a perfected security interest involves neither duration nor renewal, . . . the effect of [the] assignment is determined by Chapter 1309." *Fields*, 351 B.R. at 891.

> The assignment of a perfected security interest is addressed in § 1309.310(C), which provides that "[i]f a secured party assigns a perfected security interest or agricultural lien, a filing under this chapter is not required to continue the perfected status of the security interest against creditors of and transferees from the original debtor." Ohio Rev.Code § 1309.310(C). This subsection applies to the assignment of a "perfected security interest" without regard to the method used to perfect that security interest.

*Id.* at 891-92 (citations omitted).

Of utmost importance to the court was the fact that "[t]he absence of a re-perfection requirement for assignees is consistent with the principle purpose of the lien notation, and with perfection requirements in general: to provide interested third parties notice that another creditor claims an interest in the debtor's property." *Id.* at 892-93. Because "[n]o creditor would be misled or deceived in seeing the assignor's name on a certificate of title rather than the assignee's," the *Fields* court found that the provisions of Ohio Rev. Code § 1309.310(C) satisfied the purpose of lien notation.[3] As a result, the *Fields* court concluded that a lien which is properly perfected on the certificate of title "remains perfected after assignment as against creditors of and transferees from the Debtor" and therefore the assignee has priority over the trustee in a § 544 action. *Id.* at 894. *See also In re Verus Inv. Mgmt., LLC*, 344 B.R. 536, 545 (Bankr. N.D. Ohio 2006) (concluding that creditor who took a security interest in a properly perfected Certificate of Deposit by way of a valid assignment did not have to be re-perfected following the assignment to continue the perfected status.).

Although the underlying action in *Fields* was different, its holding controls the issue in this case. If an assignee is not required to note its assignment of a security interest on the certificate of title in order to maintain its secured status, surely its perfected status gives that creditor standing to seek relief from the automatic stay. WFB has possession of the note in this case. WFAFI properly noted its lien on the Trailblazer's certificate of title. WFAFI properly assigned its security interest in the debtor's vehicle by virtue of the June 26, 2006, receivables agreement. Therefore, under the holding in *Fields,* WFB has a properly perfected security interest in the Trailblazer despite its failure to note the assignment or its security interest on the certificate of title. Quite simply, there is no requirement under Ohio law that would dictate a different result. WFB, as a properly perfected secured creditor, has standing to seek relief from the stay.

---

[3]"Any creditor who saw the Capital One lien on the certificate of title in the *Fields* case would be led to inquire as to the status of the lien with Capital One. In turn, Capital One would inform the creditor of the assignment and lead the creditor to Wells Fargo." *Fields*, 351 B.R. at 893.

13

Further support for this conclusion comes from a bankruptcy court case from Arkansas which addressed the precise issue in this case: does an assignee have standing to seek relief from the automatic stay under 11 U.S.C. § 362(d). *In re Johnson*, 407 B.R. 364 (Bankr. E.D. Ark. 2009). In *Johnson*, the debtors financed the purchase of an RV with Key Bank. Key Bank properly perfected its lien by noting its lien on the RV's certificate of title. Subsequently, Key Bank assigned the note and the security agreement to Leham Brothers Bank who then assigned their interest to Cadlerock Joint Venture. Cadlerock Joint Venture then assigned the note and security interest to Roswell Properties, LLC. After the *Johnson* debtors filed for bankruptcy relief, Roswell filed a motion for relief from stay based on the debtors' default under the terms of the note. The chapter 7 Trustee objected to the motion alleging that Roswell did not have standing to seek relief from stay because it had not noted its lien on the RV's certificate of title.

The laws regarding assignments of interests in motor vehicles in Arkansas are the same as Ohio. A lien on a motor vehicle in Arkansas is properly perfected by noting the lien on the certificate of title. Ark. Code Ann. § 27-14-806. Additionally, Arkansas Code Annotated § 4-9-310(c) provides that "[i]f a secured party assigns a perfected security interest or agricultural lien, a filing under this chapter is not required to continue the perfected status of the security interest against creditors of and transferees from the original debtor." The *Johnson* court concluded that "[b]ecause Arkansas law does not require the assignee's name to appear on the certificate of title to maintain perfection of an existing lien in a vehicle and the evidence is that no equity exists in the vehicle," Roswell had standing to move for and to receive relief from the automatic stay. *Id.* at 369.

The court in *Johnson* made this finding despite the fact that Arkansas law provides for the issuance of a new certificate of title when that security interest is assigned. *Id.* at 366. That statute is Ark. Code Ann. § 27-14-908 which states that

> (a) Any person holding a lien or encumbrance upon a vehicle, other than a lien dependent solely upon possession, may assign his or her title or interest in or to the vehicle to a person other than the owner without the consent of the owner, and without affecting the interest of the owner or the registration of the vehicle, but in such event, he or she shall give to the owner a written notice of the assignment.

(b) The Office of Motor Vehicle, upon receiving a certificate of title assigned by the holder of a lien or encumbrance shown thereon and giving the name and address of the assignee, shall issue a new certificate of title as upon an original application.

Ark. Code Ann. § 27-14-908. The court concluded that § 27-14-908 was not dispositive of the issue for two reasons. First, because subchapter 8 is the exclusive means of perfecting a lien in a motor vehicle and § 27-14-908 is found in subchapter 9, which deals with transfers of title and registration, the *Johnson* court concluded that it has no impact on the issue of perfection of liens in motor vehicles. *Id*. at 369 ("The ultimate purpose of the Arkansas vehicle registration laws is identification of vehicles and revenue collection.... In contrast, the purpose of the commercial code is to "promote the uniform recognition of security interests which have been noted on the certificate of title," *i.e.,* to provide notice to potential purchasers or creditors that the property is encumbered." (internal citations omitted)). Secondly, the *Johnson* court looked to the UCC commentary for Ark. Code Ann. § 27-14-908 to determine that the reissuance of a certificate of title with the assignee's name listed as lienholder was not mandatory to maintain perfection:

> The UCC adopted by the General Assembly and the commentary state that the language used in Arkansas Code Annotated § 27-14-908 should be read as permissive and the overall scheme of the UCC should be followed if at possible. The general rule under the UCC is that no further action need be taken to continue perfection when dealing with assignments. Reading the UCC and the Certificate of Title Act together, the Court cannot infer that the General Assembly meant that failure to comply with Arkansas Code Annotated § 27-14-908 would result in an assigned lien in a motor vehicle being unperfected.

*Id.*

The courts which have addressed the issue in the bankruptcy arena are in unanimous agreement with the conclusion that an assignee of a security interest in a motor vehicle is not required to note its assignment or lien on the certificate of title in order to maintain its perfected status. So long as the original security interest was properly perfected by complying with the motor vehicle laws of the state, the assignee's security interest remains perfected. *Williams v. Capital Asset Recovery, LLC* (*In re McMullen*), 441 B.R. 144, 147 (Bankr. D. Kan. 2011) (relying on Kansas's

15

enacted version of U.C.C. 9-310(c), Kan. Stat. Ann. § 84-9-310(c), to conclude that "no one need file notice of an assignment of a [secured interest] in order for it to remain perfected as to the creditors and transferees of the debtor. As filing under the motor vehicle code is the equivalent of filing a financing statement for Article 9 purposes, in the absence of some language in the motor vehicle code that specifically overrides § 84-9-310(c), [the assignee] was not required to 're-perfect' when it took assignment of Finance Company's lien."); *Boston v. Chrysler Fin. Servs. Ams. LLC* (*In re Scott*), 427 B.R. 123, 130 (Bankr. S.D. Ind. 2010) (relying on same provision of the U.C.C., as adopted by the Indiana Legislature, to hold that assignee of security interest in motor vehicle was not required to note its assignment or lien on the certificate of title in order to maintain its perfected status); *Gaines v. Ford Motor Credit Corp.* (*In re Gaines*), 414 B.R. 494 (Bankr. E.D. Ark. 2009); *The Bank of New York v. Leake* (*In re Wuerzberger*), 284 B.R. 814 (Bankr. W.D. Va. 2002); *Agric. Servs., Inc. v. Fitzgerald* (*In re Field*), 263 B.R. 323 (Bankr. D. Idaho 2001).

The few courts which have addressed the issue outside the bankruptcy arena have agreed as well. *Barcosh, Ltd. v. Dumas*, No. 06-616-JJB, 2010 WL 3172984, at * 1 (M.D. La. Aug. 11, 2010); *Parks v. Mid-Atl. Fin. Co., Inc.*, 343 S.W.3d 792, 800 (Tenn. Ct. App. 2011) ("An assignee of a lien in an automobile, at its election, is provided a mechanism for having its name reflected on the title in place of the assignor by Tenn. Code Ann. § 55-3-124(a). However, the failure to take that step does not result in a loss of perfection or priority.") (footnote omitted); *Sec. Pac. Fin. Servs. v. Signfilled Corp.*, 956 P.2d 837, 841 (N.M. Ct. App. 1998).

Under the laws of Ohio, as well as the other states interpreting similar statutes, there is simply no requirement to note the assignment of a security interest in a motor vehicle on the certificate of title in order for that interest to remain properly perfected. As a result, WFB has a properly perfected security interest in the Debtor's Trailblazer. WFB, therefore, is the party entitled to enforce the security interest.

## CONCLUSION

For the foregoing reasons, the Panel reverses the order of the bankruptcy court holding that Wells Fargo Bank did not have standing to seek relief from the stay and remands the case for a

16

hearing on Wells Fargo Bank's motion for relief from the automatic stay pursuant to 11 U.S.C. § 362(d).